## Neace v. Commonwealth

June 6, 1950.

S. M. Ward, Judge.

Napier & Napier, C. W. Napier and C. W. Napier, Jr., for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

Judge Cammack—Reversing.

Jordan Neace is appealing from a judgment sentencing him to five years in prison on a charge of voluntary manslaughter. He is insisting there was not sufficient evidence to warrant the submission of the case to the jury, and that two jurors were charged with acts

which disqualified them from serving on the jury trying him.

Neace was accused of causing the death of James Flinchum by striking him with his automobile. When he was struck, the boy was riding or pushing his bicycle along Highway 118 about dusk. Neace admitted passing the scene of the accident near the time it was said to have occurred, but denied striking the boy. His car was wrecked a mile beyond the scene. There was testimony that he was drinking shortly after the wreck. Two witnesses, who were standing in front of a store about 175 steps from the scene of the accident, saw a car strike the boy, but were unable to describe the car. They said they did not know whether Neace's car passed the store just before the accident. According to their testimony, the boy was brought into their vision by lights of the car as it came around a curve. These witnesses said one or two cars may have passed them as they ran to the scene, but they could not describe the cars. John Wilder said he was standing on a railroad crossing and saw Neace's car, an old model black coupe, pass at a high rate of speed; he did not see who was driving the car; shortly after it passed he heard a ''thump''; he did not see the car strike the boy; and he ran to the place where the boy was lying and later went on to the place where the car was wrecked. Wilder said he did not see any other car pass before he heard the ''thump.'' It was shown that this witness had been convicted of a felony. Another witness said he saw a red mark on the bumper of Neace's car which corresponded in color to the red paint on the fender of the boy's bicycle.

It is our conclusion that there was sufficient evidence to warrant the submission of the case to the jury. Neace admitted driving his car past the scene of the accident at about the time it occurred. According to Wilder's testimony, no other car passed him after he saw Neace's car go by and after he heard the ''thump.''

The second ground urged for reversal presents a rather unusual situation. In a supplemental motion and grounds for a new trial it was set forth that two of the jurors, Hugh Winstead and Wilson Adams, had stated on their voir dire examination that: ''* * * they did not know anything about the facts in the case, and had not talked about the facts of the case or discussed them with

any person or persons, and did not know anything about the facts in the case, * * *."

It was stated that on numerous occasions they had discussed the facts of the case with various persons, but that the accused did not learn of this until after the trial. The affidavits of Earl Neace and Oscar Roark were filed in support of the supplemental motion and grounds for a new trial. Earl Neace said he had been present on numerous occasions when Winstead and Adams heard the case discussed, and that after the first trial Winstead said: "* * * he could not see how a jury could hang and not agree to turn the defendant loose."

Earl Neace's statements in regard to Adams were substantially the same as those he made in regard to Winstead. Oscar Roark said he was present on numerous occasions when Adams had joined in the discussion of the case. Roark said he was not related by blood or marriage to Jordan Neace. No steps were taken by the Commonwealth to deny or contradict any of the statements made in the supplemental motion and grounds for a new trial, nor in the supporting affidavits. No reason was given by the court for overruling the supplemental motion and grounds for a new trial.

In substance, it was charged that two members of the jury swore falsely on their voir dire examination when they said that they knew nothing about the facts of the case and that actually they were fully apprised of them. It was charged also that one of the jurors expressed an opinion about the case favorable to the accused.

Actual and implied bias are dealt with in Sections 209 and 210 of the Criminal Code of Practice. The purpose of these sections is to prevent a biased or partial person from serving on a jury in a criminal case. Generally speaking, one who has formed an opinion in a criminal case, and expresses it, has disqualified himself to sit in the case. In Section 209 of the Criminal Code of Practice it is said that the forming of an opinion or impression by a juror upon rumor or upon newspaper statements (where he has expressed no opinion) shall not disqualify him to serve as a juror if he states upon oath that he believes that he can fairly and impartially render a verdict in accordance with the law and evidence in the case.

In the case of Marcum v. Commonwealth, 283 Ky. 590, 142 S.W.2d 137, 139, a new trial was sought upon the charge that a juror had discussed the case and expressed an opinion that the accused were guilty sometime before he was summoned for jury service. On the voir dire examination he declared that he had never formed or expressed an opinion as to the guilt of the accused. Several affidavits were filed in support of the motion and grounds for a new trial and the court heard oral testimony on the question. It developed that the juror had shown liberality in fixing the penalty. It was pointed out that it is an exceptional case when this Court does not rest its decision on a question of this kind upon the judgment of the trial court. In directing that the accused should have been granted a new trial, it was said: "* * * However, we have here a number of witnesses testifying clearly as to a natural and reasonable circumstance on one side and the denial of the interested person, none too strong, on the other side; and, even though he manifested liberality in the fixing of a penalty, we are constrained to the view that it was an error for the trial court not to grant defendants a new trial on this ground."

The case of Banks v. Commonwealth, 227 Ky. 500, 13 S.W.2d 511, 513, presents circumstances more analogous to those in the case at bar than any case which we have been able to find in this jurisdiction. In that case a new trial was sought upon the charge that a juror said: "I would like to get on the jury trying his (defendant's) case. I would acquit him."

The statement was made in an affidavit of a half brother of the accused. The affiant stated he had not informed his brother, or counsel for his brother, of the opinion expressed by the juror. The accused and one of his counsel filed affidavits wherein they stated that neither of them had any knowledge of the statements attributed to the juror. There was no showing as to whether the other attorney knew of the situation. During the course of the opinion it was said: "* * * If there was no other reason for disallowing this objection, we would feel ourselves very much inclined to do so upon the conviction that, under the stated facts, either defendant or some one of his counsel knew of the expression of the juror's opinion forming the basis for this ground."

The Court might well have based its opinion that the accused was not entitled to a new trial because of the facts peculiar to the case. However, the refusal of a new trial was based upon the ground that the opinion expressed by the juror was favorable to the accused. After citing several civil cases from this jurisdiction and foreign authorities, it was said: "* * * The cited cases from this court, and other foreign ones that will be found cited to the text authorities referred to, state the rule to be that the expression by a subsequently accepted juror of a favorable opinion to the litigant, who eventually loses his case, does not manifest partiality against him sufficient to authorize the setting aside of an unfavorable verdict against him. We anticipate, however, that, if it were shown on the hearing of the motion for a new trial that the favorably expressed opinion of the juror was a ruse for the purpose of getting on the jury in order to render an adverse verdict, a new trial should be granted; but no such showing is or was attempted to be made in this case. We therefore conclude that this ground is without merit."

We doubt the soundness of this reasoning in a criminal case. In the case at bar the jurors were charged with swearing falsely at the time of the voir dire. Either they had some cause to practice deception, or else had little regard, to say the least, for an oath. In People v. De Haven, 321 Mich. 327, 32 N.W.2d 468, the accused was granted a new trial because two jurors had answered falsely certain questions asked them on voir dire examination. The Michigan court pointed out that a defendant has a right to be tried by an impartial jury.

In reaching the conclusion that Neace should have been granted a new trial, we feel that we are carrying out the intent and purpose of Section 209 of the Criminal Code of Practice. Insofar as the views expressed in the Banks case conflict with those expressed herein, that case is overruled.

Judgment reversed, with directions to set it aside, and for proceedings consistent with this opinion.