**Bryant PENDLETON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 1999–SC–1092–MR.**

Supreme Court of Kentucky.

June 13, 2002.

Rehearing Denied Sept. 26, 2002.

---

16. *Id.* at 282.

17. Ky., 43 S.W.3d 234 (2001).

18. *Id.* at 245.

David T. Eucker, Department of Public Advocacy, Frankfort, KY, for appellant.

A.B. Chandler III, Attorney General, Perry T. Ryan, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, for appellee.

GRAVES, Justice.

Appellant, Bryant Pendleton, was convicted in the Todd Circuit Court of first-degree sodomy and sentenced to fifty years imprisonment. He appeals to this Court as a matter of right claiming that the trial court committed reversible error by: (1) denying a hearing to demonstrate that the victim's testimony was incompetent and unreliable; (2) denying a continuance to obtain funds for an independent expert in child witness interviewing techniques; (3) failing to secure exculpatory evidence; (4) dismissing a juror for cause; (5) failing to appoint an expert to assist the defense in determining the nature and reliability of the sex-offender risk assessment; (6) allowing the victim to testify to prior acts of sodomy; and (7) refusing to grant a directed verdict. After hearing oral argument and reviewing the record, we affirm, in part and remand, in part.

In 1998, Appellant and his girlfriend, Dana Uhles, were living in a trailer in Trenton, Kentucky, with the couple's daughter, Appellant's son, and Uhles' ten-year-old daughter, D.A. In April 1998, D.A. claimed that she was playing in her bedroom when Appellant entered and shut the door. He then pulled down his pants and told her to "suck his private." At trial, D.A. testified that "something white came out" and that Appellant wiped the substance on his shirt. Appellant thereafter left, saying nothing further. D.A. claimed that this was not the first such incident.

D.A. apparently informed her mother of the incidents in a note, and again, some confusion exists over whether she then gave the note to her mother or whether her mother found it. In any event, mother and child confronted Appellant twice over the next two days, but both times he denied all allegations. He responded that D.A. was mad at him because he had refused to buy her a present on the day he had delivered a present from another family member to his son. D.A.'s mother contacted a social worker, Kathy Holman, who subsequently interviewed D.A. Appellant was eventually indicted for two counts of first-degree sodomy. Additional facts are set forth as necessary.

## I.

Prior to trial, defense counsel moved to disqualify D.A.'s testimony on the grounds that it was the product of interview techniques employed by the social worker that were "leading, suggestive, cajoling, and coercive." At a hearing, the trial court framed the issue as one concerning D.A.'s credibility, not the admissibility of the videotaped interview, which the Commonwealth did not intend to introduce. The court also noted that Kentucky does not follow the holding in State v. Michaels, 136 N.J. 299, 642 A.2d 1372 (1994), which upheld a taint hearing to determine whether interviewing techniques were so flawed as to distort a child witness's recollection of events and thereby undermine the reliability of the testimony. On the morning of trial, defense counsel again moved the trial court to review the videotape to determine D.A.'s competency Again, the motion was denied.

The parties disagree whether this issue is properly preserved for review. The Commonwealth contends that Appellant's request for the trial court to review the video tape was not, in fact, a motion for a competency hearing, to which Appellant now claims he was entitled. Furthermore, once D.A. took the stand, Appellant never raised an objection to her testimony. Appellant, on the other hand, argues that a "taint hearing" is nothing less than a competency hearing because it challenges the first-hand knowledge of the victim. Appellant asserts first-hand knowledge is lacking in this case, and D.A.'s testimony is merely the product of suggestion by the social worker. In any case, although the trial court declined to review the videotape, it was never introduced at trial.

■ Pursuant to KRE 601, a witness is competent to testify if she is able to perceive accurately that about which she is to testify, can recall the facts, can express herself intelligibly, and can understand the need to tell the truth. The competency bar is low with a child's competency depending on her level of development and upon the subject matter at hand. *Jarvis v. Commonwealth*, Ky., 960 S.W.2d 466 (1998).

■ The trial court has the sound discretion to determine whether a witness is competent to testify. *Pendleton v. Commonwealth*, Ky., 685 S.W.2d 549, 551 (1985). The trial court is in the unique position to observe witnesses and to determine their competency. *See Kotas v. Commonwealth*, Ky., 565 S.W.2d 445, 447 (1978). Age is not determinative of competency and there is no minimum age for testimonial capacity. *Humphrey v. Commonwealth*, Ky., 962 S.W.2d 870 (1998). In *Capps v. Commonwealth*, Ky., 560 S.W.2d 559, 560 (1977), we stated:

> When the competency of an infant to testify is properly raised it is then the duty of the trial court to carefully examine the witness to ascertain whether she (or he) is sufficiently intelligent to observe, recollect and narrate the facts and has a moral sense of obligation to

speak the truth. (*Quoting Moore v. Commonwealth*, Ky., 384 S.W.2d 498, 500 (1964)).

■ In this case, not only did the trial court have the opportunity to observe D.A. in the courtroom, but the judge stated that he had heard D.A.'s testimony from another case in another county and was familiar with her competency to testify. Based on its familiarity with D.A.'s ability to testify, the trial court properly held that she was competent. A review of D.A.'s testimony reveals that she was able to identify Appellant as the perpetrator, and could provide details of the acts committed against her. Furthermore, Appellant had the ability to cross-examine D.A. and undermine her credibility with the jury, if he felt her testimony had been coerced by the social worker. No error occurred.

## II.

■ Four days before trial, Appellant moved for a continuance "for the purpose of allowing the defendant to retain and interview one or more expert witnesses to aid the jury by explaining the coercive or suggestive propensities of the interviewing techniques employed in the videotape of the child victim." In denying the motion, the trial court stated that Appellant had been under indictment for four months and the case should be tried on schedule.

*Snodgrass v. Commonwealth*, Ky., 814 S.W.2d 579, 581 (1991), sets forth seven factors to be weighed in determining the propriety of granting a continuance: length of delay, number of prior continuances granted, inconvenience to litigants, which party caused the delay, availability of counsel, complexity of the case, and prejudice to the parties. *See also Hunter v. Commonwealth*, Ky., 869 S.W.2d 719 (1994). Appellant readily admits that the length of the delay would be unknown, since interviewing children is a complex

issue. The record reveals that the trial court had already granted one prior continuance for more than two weeks. Finally, Appellant concedes that the defense had the videotape of D.A.'s interview for a month before requesting the continuance. As such, the trial court did not abuse its discretion in determining that further delay for the purpose of exploring a controversial topic and setting up a battle of experts was not appropriate.

Furthermore, as noted above, the videotape was never played for the jury. Thus, Appellant was not prejudiced by the denial of additional time to controvert evidence that was never introduced. Appellant had the opportunity to cross-examine D.A., who testified about the events she remembered without reference to the videotape. Failure to grant a continuance was not error.

## III.

■ Appellant next takes issue with the failure of police officers to locate the shirt D.A. alleged he used to wipe off the "white stuff," as well as arresting Officer Harris' refusal to permit Appellant to pull down his pants to demonstrate that he suffered from genital herpes. Appellant concedes that this issue is not preserved but urges review under RCr 10.26.

■ First, contrary to Appellant's claim, we fail to perceive how the shirt would have been exculpatory evidence. In fact, had police found the shirt, it would have further supported D.A.'s allegations. Similarly, we cannot agree that the fact that Appellant was suffering from genital herpes, which D.A. evidently did not contract, constitutes exculpatory evidence either. Appellant did not offer any evidence that herpes is transmitted by each and every contact with an infected person. As Appellant failed to raise these issues be-

fore the trial court, such are not preserved for review in this Court. Further, error, if any, did not affect Appellant's substantive rights and does not warrant reversal of his conviction. RCr 10.26.

### IV.

■ After the trial began, Juror Townsend revealed that he recognized members of D.A.'s family from church, although he had not remembered their names when asked during voir dire. During an in-chambers hearing, Juror Townsend stated that his knowledge of D.A.'s family would not affect him because he was "leaning towards the defendant." The Commonwealth thereafter moved for the dismissal of Juror Townsend. The trial court stated it would make a decision at the close of the evidence, at which time Juror Townsend was dismissed as the alternate. Appellant now argues that the dismissal was improper.

This Court has long recognized that "[a] determination as to whether to exclude a juror for cause lies within the sound discretion of the trial court, and unless the action of the trial court is an abuse of discretion or is clearly erroneous, an appellate court will not reverse the trial court's determination." *Sholler v. Commonwealth,* Ky., 969 S.W.2d 706, 708 (1998), *quoting Commonwealth v. Lewis,* Ky., 903 S.W.2d 524, 527 (1995). Jurors are routinely dismissed for cause for knowing parties and/or witnesses, as well as for expressing bias toward one party or the other. Obviously, Appellant wished to keep Juror Townsend because of his indication of bias toward Appellant. While we can understand Appellant's desire to keep a juror he felt could be a proverbial ace in

the hole. Appellant has no right to the inclusion of any particular juror on the panel. We cannot conclude that the trial court abused its discretion in this instance since it was in the best position to view and make decisions about the demeanor and answers of Juror Townsend.

### V.

■ Appellant argues that defense counsel did not have adequate time to review the risk assessment report. We have recently held that due process rights require that Appellant have sufficient time to review the risk assessment report, and to employ an expert to study the report, examine Appellant, and help address the conclusions reached in the report. As such, it was error for the trial court to deny defense counsel's request for a continuance during the risk assessment hearing.

KRS 17.570(1), as amended in 1998[1], provides that upon the conviction of a "sex crime" as defined in KRS 17.500, the sentencing court shall order a sex offender risk assessment to determine whether the offender should be classified as a high, moderate, or low risk offender; to designate the length of time the offender should register; and to designate the type of community notification that should be provided upon the offender's release. Following the completion of the assessment by a certified provider, the court is required to hold a hearing and "review the recommendations of the certified provider along with any statement by a victim or victims and any materials submitted by the sex offender." KRS 17.570(3). The Kentucky Rules of Criminal Procedure apply and the sex offender has the right to attend the hearing and be heard. KRS 17.570(4).

---

1. In April 2000, the General Assembly enacted Senate Bill 263, which eliminated the process of ordering a risk assessment prior to the classification of a sex offender and the entire classification scheme. As Appellant was convicted and sentenced in 1999, the 1998 version of the statute is applicable.

Recently, this Court in *Hyatt v. Commonwealth*, 72 S.W.3d 566 (2002) held that the defendant's due process rights were violated at the risk assessment hearing because the report arrived too late to provide him with notice of its contents, to allow counsel to read and consider it, and to allow sufficient time for preparation including the calling of expert witnesses, if any, to counter the conclusions of the report. The situation presented in this case is essentially indistinguishable from *Hyatt, supra.* Defense counsel received Appellant's risk assessment report the day before the hearing. At the hearing, counsel stated he was not prepared to address the conclusions reached by the certified provider and requested a continuance to review the report and have an expert appointed to help prepare for the hearing and possibly conduct an independent evaluation of Appellant. The Commonwealth contends that Appellant did not contest the contents of the report. However, a review of the video indicates that the trial court asked if there were any factual discrepancies contained therein. While defense counsel noted he did not see any factual errors, at no time did he state that Appellant accepted the conclusions in the report.

Both the Fourteenth Amendment to the United States Constitution and Section 11 of the Kentucky Constitution guarantee the right of a defendant to call witnesses on his behalf. While due process rights may be limited in certain proceedings, Appellant was entitled to notice of the report's contents in order to be able to present experts to testify during the risk assessment hearing. By failing to grant a continuance, the trial court denied Appellant due process of law. This case is remanded for a hearing in accordance with the pre–2000 amendments.

## VI.

■ Appellant argues that the trial court erred in allowing D.A. to testify that Appellant sodomized her on multiple occasions. Under KRE 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible in order to prove the character of a person or in order to show action in conformity therewith." Prior acts may be admissible for other purposes, however, and the Commonwealth argues here that the evidence was admissible under KRE 404(b)(2), because it was "so inextricably intertwined with other evidence essential to the case that separation of the two could not be accomplished without serious adverse effect on the offering party."

In the instant case, the witness was an 11–year–old child, who was unable to answer specific questions as to the dates of specific crimes. The prosecutor asked her general questions about locations and dates to which she responded sometimes with answers that pertained to the incident in question and sometimes to other incidents. Evidence of similar acts against the same victim is admissible under KRE 404(b)(1) as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Thus, while D.A. was unable to separate the details of the various incidents, her testimony was nonetheless admissible. *Price v. Commwealth*, Ky., 31 S.W.3d 885, 888, n. 4 (2000). Further, to limit her testimony to only the mid-April incident could have effectively prevented her from testifying as to any of the acts.

## VII.

■ Finally, Appellant argues that he was entitled to a directed verdict because D.A.'s testimony, in his opinion, was "inherently incredible and improbable." Again, Appellant relies on the fact that D.A. did not contract genital herpes. Appellant did not produce any evidence that

genital herpes, if in fact he was suffering from an outbreak at the time of the offense, is always transmitted. We are of the opinion that the Commonwealth produced sufficient evidence for a reasonable jury to conclude that Appellant was guilty of the charged offenses so as to withstand a directed verdict. *Commonwealth v. Benham*, Ky., 816 S.W.2d 186 (1991); *Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3 (1983).

For the foregoing reasons, we affirm Appellant's conviction for first-degree sodomy. However, we remand the matter for a new risk assessment hearing consistent with this opinion.

LAMBERT, C.J., COOPER, GRAVES, JOHNSTONE, and WINTERSHEIMER, J.J. concur.

STUMBO, J., dissents in a separate opinion in which KELLER, J., joins.

STUMBO, Justice, dissenting.

Respectfully, I must dissent from that portion of the majority opinion which holds that it was not error for the trial court to conduct an evidentiary hearing into the issue of whether the victim's testimony should be suppressed due to the use of improper and perhaps coercive interview techniques. The majority, like the trial court, simply treats this issue as one of witness competency. While that is in essence the final decision that must be reached by a trial court when considering this particular type of challenge to witness testimony, the issue is more subtle and complex than the plain factors set forth in KRE 601. That, however, is where the inquiry must begin.

KRE 601 establishes that a witness is competent only if four facts exist:

1. The witness is able to perceive accurately whatever it is they want to testify about;

2. The witness can recall the facts;

3. The witness can express him or herself intelligibly; and,

4. The witness understands the need to tell the truth.

The New Jersey Supreme Court noted that "[i]f a child's recollection of events has been molded by an interrogation, that influence undermines the reliability of the child's responses as an accurate recollection of actual events." *State v. Michaels*, 136 N.J. 299, 642 A.2d 1372, 1377 (1994). The precise issue the court addressed in *Michaels* was "whether the interview techniques used by the State in this case were so coercive or suggestive that they had a capacity to distort substantially the children's recollections of actual events and thus compromise the reliability of the children's statements and testimony based on their recollections." *Id.* at 1377. The concern voiced by the New Jersey Supreme Court and Appellant herein is that the child witness can be suggestible and easily led and that if questioned repeatedly and in a coercive fashion, the child will no longer be able to distinguish between what actually happened to him or her and what the questioning party wanted to hear. As noted in *Michaels:*

> "[A] fairly wide consensus exists among experts, scholars and practitioners concerning improper interrogation techniques. They argue that among the factors that can undermine the neutrality of an interview and create undue suggestiveness are a lack of investigatory independence, the pursuit by the interviewer of a preconceived notion of what has happened to the child, the use of leading questions, and a lack of control for outside influences on the child's statements, such as previous conversations with parents or peers."

*Id.* Thus, the inquiry is whether the method of questioning has so affected the victim that his or her ability to recall facts and to perceive accurately whatever it was they were to testify about. The witness can be competent in the sense that his or her mental acuity and maturity are such that ordinarily the witness would be allowed to testify, yet the witness' recollection of the specific incident at issue is so warped or affected by the improper questioning that he or she is rendered incompetent.

Appellant argued to the trial court and asserts here that the videotape of the child victim's interview was leading and suggestive and that the social worker doing the questioning assumed that bad things had happened. He further states that the social worker, not the victim, told the story. At trial, he specifically requested that the court consider whether the victim's testimony was tainted by the method by which she was questioned and hold a taint hearing to take evidence. The trial court specifically denied the motion on the grounds that there was no legal precedent for such a hearing in Kentucky. He further stated that he had not reviewed the videotape of the interview. The court also denied a defense motion for funds with which to hire an expert on child interviewing techniques.

Given that there was no physical evidence to support the charges, the victim's testimony was critical to the case. Appellant faces fifty years in prison. The trial court should have held a hearing to determine whether the method of questioning used tainted the victim's testimony to the extent that she was rendered incompetent to testify. I would reverse and remand this conviction for retrial.

KELLER, J., joins this dissent.