**Joseph Wayne ALLEN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2007–SC–000642–MR.

Supreme Court of Kentucky.

Nov. 26, 2008.

Rehearing Denied March 19, 2009.

Joseph R. Eggert, Michael L. Goodwin, Louisville, KY, Counsel for Appellant.

Jack Conway, Attorney General, Heather M. Fryman, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

Joseph Wayne Allen appeals as a matter of right from an August 15, 2007 Judgment of the Jefferson County Circuit Court convicting him of rape, sodomy, kidnapping, burglary, sexual abuse, and tampering with physical evidence. The Commonwealth alleged that on June 7, 1996, Allen brutally raped and sexually abused his then girlfriend's thirteen-year-old daughter, N.L., in her Louisville, Kentucky home. Following the attack, police investigators obtained semen and sperm cells from N.L.'s rape kit. Although no arrests were made after the offense and the case was labeled as a "cold case," in 2004, Jefferson County Detectives obtained a buccal swab from Allen and submitted it to the Kentucky State Police Laboratory for DNA profiling. After the lab matched Allen's DNA to that of N.L.'s attacker, Allen was arrested and charged with the 1996 rape and sexual abuse of N.L. A Jefferson County jury ultimately found Allen guilty of all the charged offenses. Subsequently, the trial court sentenced Allen to serve seventy years in prison.

On appeal, Allen alleges two trial court errors. First, Allen contends that the trial court failed to excuse two jurors for cause who allegedly gave false answers to voir dire questions or expressed an unwillingness to be impartial. Second, Allen argues that the trial court erroneously failed to inform the jury of the statutorily authorized limit of seventy years imprisonment for consecutive indeterminate terms. Having determined that the trial court abused its discretion in failing to strike Juror 39 for cause, we reverse the August 15, 2007 Judgment of the Jefferson Circuit Court and remand Allen's case for a new trial. We further conclude that upon retrial the jury should be instructed regarding the seventy-year limit on imprisonment imposed by KRS 532.110($l$)(c).

## RELEVANT FACTS

During the early morning hours of June 7, 1996, N.L., who was thirteen years old at the time, awoke and saw a man standing in the doorway of her bedroom. Since N.L.'s mother had already left for work and her siblings had spent the night elsewhere, N.L. was alone in the residence. The man proceeded to blindfold N.L. with duct tape, to tie her hands and legs to her bed, and to put duct tape over her mouth. The man then sexually assaulted and raped N.L. Following the rape, the man led N.L. into the bathroom, put her into the bathtub, and forced water into her

vagina using what N.L. believed to be the rubber hose from the shower attachment. The man then took N.L. back into her bedroom and re-tied her to the bed. N.L. testified that throughout the attack, she could not recognize the perpetrator's voice and believed he was disguising his voice.

Soon after the attack, while N.L. was still traumatized and tied to her bed, she heard her mother's boyfriend, Joseph Allen, enter the residence and call for her to wake up. When Allen entered her bedroom, he shouted "Oh my God!" and removed N.L.'s blindfold and restraints. Following the attack, police investigators were able to obtain some semen and sperm cells from N.L.'s rape kit. The police suspected that the attacker was someone close to the family because there was no sign of a forced entry and the family's dogs did not bark to alert anyone to the intruder. However, after several months passed with no leads on potential suspects, the police labeled N.L.'s case as open but inactive. Eight years later, in 2004, a "cold case" detective received a call from N.L.'s mother inquiring about the case. This call spurred an investigation that resulted in the detectives obtaining a buccal swab from Allen to be submitted to the Kentucky State Police (KSP) lab for DNA profiling. The KSP lab determined that Allen's DNA matched 7 of the 13 loci of the DNA sample from N.L.'s rape kit and that this match would occur once in every 754 million persons. Based on this result, the Jefferson Circuit Court issued an arrest warrant for Allen on May 6, 2004. On January 7, 2005, Allen was arrested in Lake County, Florida, and then transferred to Jefferson County, Kentucky to await trial.

Allen's trial began on June 11, 2007. Following voir dire, the trial court granted the parties' agreed motion to strike six specific jurors for cause. Allen then made a motion to strike an additional eleven jurors for cause, arguing that these jurors sympathized with abused children. Although the trial court granted this motion as it related to one juror, it denied Allen's request to excuse the other ten jurors for cause. Allen then used his peremptory challenges to strike seven of these ten jurors. Ultimately, only one person from this group of ten sat on the jury in Allen's case. Following the presentation of the evidence, the jury returned guilty verdicts as to all counts charged. The jury then recommended that Allen serve twenty year sentences for the rape, sodomy, kidnapping, and burglary counts; that he serve five year sentences for the sexual abuse and tampering with physical evidence counts; and that all of his sentences run consecutively for a total sentence of 130 years. However, at Allen's final sentencing, which occurred on August 13, 2007, the trial court imposed the maximum allowable sentence of seventy years. This appeal followed.

## ANALYSIS

**I. Because Juror 39 Admitted That He Thought He Had Already Formed An Opinion In Allen's Case, The Trial Court's Failure to Strike Him For Cause Amounted to An Abuse of Discretion.**

At the conclusion of voir dire, both parties agreed as to challenges for cause of six specific jurors. Although the Commonwealth made no additional challenges for cause, Allen submitted to the trial court that an additional eleven jurors should be struck for cause. The trial court agreed that one of these jurors should be disqualified, but denied Allen's motion as to the remaining ten jurors. Allen then used all but two of his available peremptory chal-

lenges to strike seven of these jurors.[1] Allen now argues that of the seven jurors he excluded with peremptory challenges, two of them, Juror 19 and Juror 39, should have been struck for cause. Allen contends that the trial court's failure to excuse these two jurors for cause substantially infringed on his right to a fair trial and constituted reversible error.

In response to voir dire questions, Juror 19 stated that he knew some police officers and had a friend in high school who had been sexually assaulted by her father. Nonetheless, Juror 19 revealed that these relationships would not affect his ability to weigh the evidence and remain impartial. Allen, however, moved to have Juror 19 dismissed for cause. In denying this motion, the trial judge stated that he believed Juror 19 could be impartial and that Juror 19 was just "saying things to try to get off this trial." When questioned about his prior relationships, Juror 39 stated that a friend of a "mutual acquaintance" had gone through a trial similar to that of Allen's case. Juror 39 then recounted a vague story where he revealed that although he had initially formed an opinion about that case before the trial began, he eventually changed his mind because of the evidence presented throughout the person's trial. After sharing this experience, the defense counsel inquired of Juror 39, "And you think that would affect your ability to be fair and unbiased to one side or another?" Juror 39 replied, "Urn, I ... unfortunately, I think I've already come to a conclusion in this case."[2]

Allen then moved for Juror 39 to be struck for cause, arguing that he was clearly partial to one side. The Commonwealth responded by noting that Juror 39's answers were vague, that he demonstrated an ability to disregard his initial impressions about a case and weigh the evidence presented, and that he may have been saying things just to "get off the jury." The trial judge agreed that Juror 39 should not be struck for cause, simply stating that he was not going to "allow him off for that reason." On appeal, Allen contends that the trial judge's belief that these jurors were saying things to procure their disqualification from service is proof that they were unsuitable jurors.

■ Kentucky's Rules of Criminal Procedure require a potential juror to be excused as not qualified for service if there is reasonable ground to believe that he or she cannot render a fair and impartial verdict. RCr 9.36. This Court has held that at the voir dire stage, there are no "magic" questions to determine whether a juror is impartial and capable of rendering a fair decision. *Shane v. Commonwealth,* 243 S.W.3d 336, 338 (Ky.2007). Rather, a judge must instead determine the credibility of the juror's answers based on the entirety of the juror's responses and demeanor. *Id.* On appeal, a trial court's decision not to strike a juror for cause is reviewed for abuse of discretion. *Adkins v. Commonwealth,* 96 S.W.3d 779 (Ky. 2003); *Pendleton v. Commonwealth,* 83 S.W.3d 522 (Ky.2002).

■ Allen argues that since the trial judge was convinced that these jurors were lying to get out of jury service and were violating the oath previously administered to them, the court should have dis-

---

**1.** Allen then used his remaining peremptory challenges to strike two other jurors who were not in the group he wanted to strike for cause. Thus, Allen used all nine of his peremptory challenges.

**2.** Juror 39 says something else following this admission, but his statement is inaudible on the video record because of background noise in the courtroom and because of the juror's distance from the microphone.

missed them for cause. However, the trial judge never found that these jurors were lying nor did he find that they violated their oath. Rather, the trial judge indicated that he believed these potential jurors had brought up their personal experiences in the hopes of being dismissed from jury service. This Court has held that a juror's attitude toward service does not alone indicate that the juror is predisposed to render a guilty or a not guilty verdict. *Sanders v. Commonwealth*, 801 S.W.2d 665, 669–670 (Ky.1990). Here, despite observing a seemingly negative attitude towards jury service from Jurors 19 and 39, the trial court ultimately determined that both jurors could render a fair and impartial verdict and so need not be struck for cause. Although the record does not suggest that the trial court's determination as to Juror 19 was unreasonable, with regard to Juror 39, we find that because he admitted that he thought he had already formed an opinion about Allen's case, Juror 39 should have been struck for cause.

■ Juror 19 stated that even though he knew some police officers and knew someone who was the victim of a sexual assault, he could be fair and impartial in the case against Allen. *See Young v. Commonwealth*, 50 S.W.3d 148, 163 (Ky.2001) (holding that a court does not abuse its discretion when it refuses to strike a juror who knew a police officer); *Woodall v. Commonwealth*, 63 S.W.3d 104, 118 (Ky. 2001) (concluding that a court is not required to strike a juror who knows someone who was a victim of a similar crime). Thus, it was not unreasonable for the trial court to deny Allen's motion to strike Juror 19 for cause.

■■ Although Juror 39 told a story demonstrating that in the past he had set aside his initial opinion of a case and made a decision based on the evidence presented at trial, he nonetheless stated that he had already formed an opinion about Allen's case. In general, a juror who claims to have formed an opinion on a case has disqualified himself for service. *Neace v. Commonwealth*, 313 Ky. 225, 230 S.W.2d 915, 916 (1950). If after expressing an opinion about an aspect of the case the juror claims to be able to render a fair and impartial verdict based solely on the evidence, a trial court does not necessarily abuse its discretion by allowing that juror to remain on the case. *Bolen v. Commonwealth*, 31 S.W.3d 907, 910 (Ky.2000). However, Juror 39 never specifically stated that he would set his opinion aside and decide the case based on the evidence presented at trial. Although his story may have demonstrated as such, the fact remains that he unequivocally stated that he thought he had already come to a conclusion in this case. Thus, it was unreasonable and an abuse of discretion for the trial court to deny Allen's motion to strike Juror 39 for cause.

■ In *Shane v. Commonwealth, supra*, we hold that if a trial court abuses its discretion in failing to grant a challenge for cause, and the challenging party uses all of his available peremptory challenges, the trial court's error is grounds for reversal. *Id.* at 341. Although Allen used one of his peremptory challenges to remove Juror 39 from the jury, because Juror 39 should have been struck for cause and because Allen used all of his peremptory challenges, Allen is entitled to a new trial.

## II. The Trial Court Erred In Failing to Instruct the Jury On the Seventy-Year Sentencing Cap Imposed by KRS 532.110(1)(c).

■ Before the penalty phase of Allen's trial began, the prosecutor informed the trial court that he was aware Allen would serve, at most, seventy years in prison due to the sentencing cap imposed by KRS

532.110(1)(c). However, the Commonwealth argued that the jury should be permitted to impose a sentence in excess of that limit in order to "send a message." The trial judge agreed, and the jury received no instructions on the seventy-year cap. As a result, the jury recommended that Allen serve six twenty-year sentences (for three counts of rape, and one count each of sodomy, kidnapping, and burglary) and two five-year sentences (for one count each of sexual abuse and tampering with physical evidence), with all sentences to run consecutively for a total of 130 years in prison. Despite this recommendation, at the final sentencing on August 15, 2007, the trial court reduced Allen's sentence in accordance with KRS 532.110(1)(c) and imposed a term of seventy years. On appeal, Allen requests that if this Court reverses his conviction based on his jury selection argument, a jury in any subsequent proceeding be instructed as to the seventy-year cap. Finding that the trial court erred in failing to instruct the jury on this sentencing cap, and having already granted Allen a new trial, we agree that the jury in any subsequent trial should be instructed on the statutory seventy-year sentencing limit.

KRS 532.055(2) governs how a jury sentences felony offenders after returning a guilty verdict, stating that the jury is to "determine the punishment to be imposed within the range provided elsewhere by law." One sentencing range "provided elsewhere by law" that applies to felony offenders and that limits their total sentence is found in KRS 532.110(1)(c). KRS 532.110(1)(c) states that "multiple sentences shall run concurrently or consecutively as the court shall determine at the time of sentence," and that "[i]n no event shall the aggregate of consecutive indeterminate terms exceed 70 years." According to these statutes, Allen was subject to a maximum sentence of seventy years in

prison. In running all his sentences consecutively, however, the jury recommended that he serve 130 years in prison. Allen is correct that this recommendation violated the plain language of KRS 532.055(2) and KRS 532.110(1)(c). Thus, the trial court erred in failing to instruct the jury on the maximum allowable sentence under the statutes. Because we have already held that Allen is entitled to a reversal of his convictions and a new trial, we direct that the jury in any subsequent proceeding be instructed as to the sentencing cap set forth in KRS 532.110(1)(c).

## CONCLUSION

During voir dire, Juror 39 stated that he may have already come to a conclusion in Allen's case. Because this statement indicated that Juror 39 would not be impartial in rendering a verdict, it was unreasonable and an abuse of discretion for the trial court to deny Allen's motion to strike Juror 39 for cause. Furthermore, the trial court also erred by failing to instruct the jury as to the sentencing limit imposed by KRS 532.110(1)(c). Allen's conviction and sentence as set forth in the August 15, 2007 Judgment of the Jefferson Circuit Court are hereby reversed and this case is remanded for subsequent proceedings not inconsistent with this opinion.

MINTON, C.J.; CUNNINGHAM, NOBLE, SCHRODER, and VENTERS, JJ., concur. SCOTT J., concurs by separate opinion.

Concurring Opinion by Justice SCOTT.

I concur in result with the majority's opinion, as I am bound to follow precedent as I did in *Fugett v. Commonwealth*, 250 S.W.3d 604 (Ky.2008). However, I must point out that *Shane v. Commonwealth*, 243 S.W.3d 336 (Ky.2007) and *Thomas v.*

*Commonwealth,* 864 S.W.2d 252 (Ky.1993), again causes us to reverse a conviction solely on the illusory grounds that the trial was unfair. Remember, the juror we are arguing about and for which we reverse this case, *did not even sit on the jury.* So, how was the trial unfair or the verdict unreliable? The structural error principle of *Thomas,* barring applications of harmless error, never made sense to me and still does not. *See Morgan v. Commonwealth,* 189 S.W.3d 99, 104 (Ky.2006) (*overruled by Shane,* 243 S.W.3d 336). Hopefully, someday we can put *Thomas* back where it belongs, R.I.P.