# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.



**Supreme Court of Kentucky**

2015-SC-000226-MR

WENDELL K. DIXON          APPELLANT

ON APPEAL FROM FAYETTE CIRCUIT COURT
V.          HONORABLE THOMAS L. CLARK, JUDGE
NO. 13-CR-01124

COMMONWEALTH OF KENTUCKY          APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

### I. BACKGROUND

Appellant, Wendell K. Dixon, and April Ballentine had dated and lived together for approximately five years before she ended their relationship. On the evening of their breakup, Appellant assaulted Ballentine. According to Keith Martin, an acquaintance of the couple, Appellant threatened killing Ballentine at least three times in the following weeks. Approximately two months later, Appellant shot Ballentine multiple times, causing severe injuries necessitating the use of life-saving measure by emergency responders. Ballentine's spinal cord was severed and she was paralyzed from the breastbone down. It is unlikely she will ever walk again.

A Fayette Circuit Court jury ultimately convicted Appellant of one count of first-degree assault and two counts of first-degree wanton endangerment. The trial court imposed a sentence of twenty-eight years' imprisonment.

Appellant now appeals as a matter of right, Ky. Const. § 110(2)(b), arguing the trial court erred in: (1) striking two impartial jurors for cause and (2) admitting irrelevant and unduly prejudicial KRE 404(b) evidence of prior bad acts.

## II. ANALYSIS

### A. Jurors

Appellant first alleges the trial court erred in granting the Commonwealth's motions to strike two jurors for cause. He insists the two jurors were impartial. Both parties agree Appellant's trial counsel properly preserved this issue as to one of the jurors, but disagree on the issue of preservation as to the other. We find it unnecessary to address the issue of preservation, as it does not affect our holding. For the reasons that follow, we affirm the trial court.

"This Court has long recognized that '[a] determination as to whether to exclude a juror for cause lies within the sound discretion of the trial court, and unless the action of the trial court is an abuse of discretion or is clearly erroneous, an appellate court will not reverse the trial court's determination.'" *Pendleton v. Commonwealth*, 83 S.W.3d 522, 527 (Ky. 2002), *quoting Sholler v. Commonwealth*, 969 S.W.2d 706, 708 (1998). Therefore, we will analyze whether the trial court abused its discretion in striking these two jurors. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

2

Section 11 of the Kentucky Constitution and the Sixth and Fourteenth Amendments to the United States Constitution guarantee the right to an impartial jury. Kentucky Rules of Criminal Procedure 9.36(1) provides in pertinent part: "[w]hen there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified." We have held that a trial court must "determine the credibility of the juror's answers based on the entirety of the juror's responses and demeanor." *Allen v. Commonwealth*, 276 S.W.3d 768, 772 (Ky. 2008). In so doing, "The trial court has the duty to evaluate the answers of prospective jurors in context and in light of the juror's knowledge of the facts and understanding of the law." *Stopher v. Commonwealth*, 57 S.W.3d 787, 797 (Ky. 2001).

In the case at bar, Appellant's defense was never that he did not shoot his ex-girlfriend. Rather, Appellant's counsel indicated during voir dire that Appellant was suffering from depression at the time he shot Ballentine. That prompted defense counsel to ask the jury panel if any of them had experience with severe depression and four of the prospective jurors raised their hands in response. Of the four, the Commonwealth moved to strike two, and the trial court granted those motions.

At the time of trial, Juror 4081 was undergoing treatment for depression including counseling and medication. In the distant past, both Juror 4081 and his aunt had been hospitalized due to depression. Moreover, this juror indicated that depression "definitely" played a role in his older sister's death

3

years earlier. Juror 4081 stated that "I would not excuse somebody because of depression or anxiety, but I would also not think down upon him or her, or whatever." Since Appellant's defense was based on his alleged depression following his and Ballentine's breakup, the Commonwealth moved to have Juror 4081 stricken for cause due to his long personal and family history with depression, opining it may cause him to be biased toward Appellant's defense.

Juror 4371 also raised his hand when defense counsel asked the panel about experience with severe depression. He indicated his wife had dealt with depression and anxiety for thirty-five years and had been on medication for these conditions. When defense counsel asked Juror 4371 if, in light of his wife's situation, he could be fair if any evidence of depression were introduced during trial, he responded that he did not know if it would affect him. Later, when the prosecutor asked if his experience would cause him to be sympathetic toward the defendant, he responded, "I really don't know if that would sway my, you know, my, to be honest, I don't know if it would sway me at all." Juror 4371 further stated he was not sure if his wife's depression would cause him to go lighter on the penalty phase. The Commonwealth moved to have Juror 4371 stricken for cause due to these responses.

Appellant argues that the trial court abused its discretion in striking the aforementioned jurors, as nothing in either juror's responses suggested they could not conform their views to the requirements of the law in order to render an impartial verdict. *See Mabe v. Commonwealth*, 884 S.W.2d 668, 671 (Ky. 1994). We disagree. We reiterate that we will not substitute our judgment for

4

that of the trial court in the absence of an abuse of discretion, as the trial court was in the best position to evaluate the jurors' complete responses and demeanor. Given the jurors' responses to questions concerning depression and given the fact that Appellant's defense centered around his depression, we cannot hold that the trial court's decision to strike these jurors for cause was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. Therefore, we affirm the trial court on this issue.

## B. Evidence of other crimes, wrongs, or acts

Next, Appellant argues the trial court committed reversible error when it admitted KRE 404(b) evidence of other crimes, wrongs, or acts. Specifically, Ballentine testified that the day she broke up with Appellant, he grabbed her head and pushed her out the front door of his brother's home, kicked her in the back, bruised her forehead, and pulled out her hair. Keith Martin (who attended church with Appellant and Ballentine and had known Ballentine for years) also testified that Appellant communicated threats against Ballentine to him. Martin testified that Appellant told him a week after the breakup that he "ought to kill that bitch." Martin testified that he saw Appellant again a couple of weeks later and Appellant told him he might have to serve six months on the charges pursuant to his assault on Ballentine on the night of their breakup. Martin testified that Appellant stated he would "kill that bitch." Martin further stated he saw Appellant again a week later and he again indicated that he "should kill that bitch" and added "it's fucked up that [I'm] locked up."

5

Kentucky Rules of Evidence 404 deals with character evidence and evidence of other crimes. More specifically, KRE 404(b) provides:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
>
> > (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or
> >
> > (2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

In *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994), this Court stated "trial courts must apply the rule cautiously, with an eye towards eliminating evidence which is relevant only as proof of an accused's propensity to commit a certain type of crime." However, this Court has ruled on numerous occasions that "similar acts perpetrated against the same victim are almost always admissible" to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Price v. Commonwealth*, 31 S.W.3d 885, 888 n. 4 (2000). Our first step in analyzing whether KRE 404(b) evidence was properly admitted is to determine whether it fell within one of these recognized exceptions to the exclusionary rule.

"[I]t has long been a rule in this jurisdiction that threats against the victim of a crime are probative of the defendant's motive and intent to commit the crime . . . ." *Sherroan v. Commonwealth*, 142 S.W.3d 7, 18 (Ky. 2004). This Court has further held that any contention that evidence should be excluded of

6

prior assaults perpetrated by the defendant against the victim "would border on absurdity." *Smith v. Commonwealth*, 904 S.W.2d 220, 224 (Ky. 1995).

Here, Appellant did not deny that he shot Ballentine. However, Appellant's mental state was at issue, as he requested and received a jury instruction on Assault under Extreme Emotional Disturbance (EED). In order for an EED claim to succeed, the jury must believe "[t]he defendant [was] both extremely emotionally disturbed and acting under that emotional influence; and there [was] an identifiable 'triggering event' which resulted in the emotional disturbance." *Driver v. Commonwealth*, 361 S.W.3d 877, 888 (Ky. 2012), *citing Spears v. Commonwealth*, 30 S.W.3d 152, 155 (Ky. 2000). The evidence of Appellant's prior assault on Ballentine and of his threats against her were certainly relevant given the nature of Appellant's defense. His history with the victim and the threats he made against her life showed his motive and intent to commit the crime and tended to disprove his defense that he acted under the emotional influence of his breakup with Ballentine. This evidence was not admitted merely to show that Appellant had a propensity to commit the type of crimes with which he was charged.

Thus, we hold that the trial court did not err in admitting evidence of Appellant's other crimes, wrongs, or acts.

### III. CONCLUSION

For the foregoing reasons, we affirm Appellant's convictions and corresponding sentences.

All sitting. All concur.

7

COUNSEL FOR APPELLANT:

Samuel N. Potter, Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear, Attorney General of Kentucky

Jeffrey Ray Prather, Attorney General Special Prosecutions