**J.E., a child under eighteen, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee**

NO. 2016–CA–000116–ME

Court of Appeals of Kentucky.

APRIL 28, 2017; 10:00 A.M.

BRIEF FOR APPELLANT AND AT ORAL ARGUMENTS: Kathleen K. Schmidt, Renee Sara Vanderwallbake, Frankfort, Kentucky

BRIEF FOR APPELLEE AND AT ORAL ARGUMENTS: Andy Beshear, Attorney General of Kentucky, Christopher S. Nordloh, Assistant Attorney General, Covington, Kentucky

BEFORE: CLAYTON, DIXON AND D. LAMBERT, JUDGES.

## OPINION

LAMBERT, D., JUDGE:

This matter comes before this Court for discretionary review of a decision by the Kenton Circuit Court, sitting in appellate jurisdiction of a decision by the Kenton District Court. The Appellant, J.E., a minor, seeks review of the Circuit Court's affirmation of the District Court's adjudication of his guilt of the offense of Sodomy in the First Degree where the victim was under the age of twelve years.

The Appellant (hereafter, J.E.), contends that the Kenton District Court committed several reversible errors. J.E. argues the trial court improperly found the eight-year-old victim competent to testify. He also contends that the District Court

violated the Confrontation Clause of Sixth Amendment by placing screens between himself and victim during her testimony. He also asserts the District Court committed error in allowing the victim's grandmother to sit near her and hold her hand during testimony, though he failed to properly preserve this claim of error. J.E.'s final argument challenges the District Court's finding that the evidence was sufficient to show guilt. Having reviewed the record, we affirm the District and Circuit Courts' rulings as to the issues relating to the child victim's competency and the grandmother's alleged interference in the victim's testimony.

However, we also conclude that the screening procedures implemented by the District Court violated the Confrontation Clause contained in the Sixth Amendment of the U.S. Constitution. We further conclude that the trial court's ruling regarding the sufficiency of the evidence, in light of our conclusion regarding the confrontation issue, cannot stand. Consequently, we must reverse as it relates to those two issues.

## I. FACTUAL AND PROCEDURAL HISTORY

The Cabinet for Health and Family Services ("CHFS"), removed the victim and her brother from their home, and placed them with their father on July 18, 2013. At the time, the victim was 6 years old, and the brother was 10 years old. The father's residence had two bedrooms, but housed six people, including the Appellant, age 14 at the time. The victim shared one of those bedrooms with her brother, J.E.,[1] and another boy.

During a visit by a CHFS social worker, the victim disclosed that J.E. had touched her in the genital area, and that her brother had caught J.E. in the act. The children were subsequently interviewed at the Children's Advocacy Center ("C.A.C."). The victim gave a statement that J.E. had "licked my kitty cat," (which is the name by which she referred to her vagina) and her brother gave a statement indicating that he had gone into the bedroom and pulled the covers off the bed to find J.E. stroking the victim's genitals with his fingers and digitally penetrating her. J.E. gave a statement (and later offered similar testimony at the adjudication hearing) that the victim had asked him to perform these acts, but he refused her requests. J.E. also stated that he would have told his mother about the victim's behavior, but the mother was heavily under the influence of drugs and would not have acted on this information.

CHFS subsequently removed the children from their father's home and placed them with other relatives.

The juvenile complaint alleging J.E. had committed sodomy was sworn on December 12, 2013. The Kenton District Court conducted a competency hearing for the victim and the brother on August 20, 2014. The victim gave satisfactory responses to questions regarding the difference between telling the truth and lying, but refused to answer the District Court's questions about the incident giving rise to the charges. The court stated that there was a potential issue with the victim's ability to recall facts, but deferred ruling on her competency until the date of the adjudication hearing. The court also denied the defense's request to have a psychologist examine the victim and determine her

---

1. J.E. is the son of the significant other of the father of the victim, and is thus not related to the victim.

competency. The District Court found the brother competent without issue.

The District Court conducted a hearing on January 14, 2015, which related to confrontation issues. At the outset of this hearing, Commonwealth noted that the victim and her brother had not yet been evaluated by a psychologist, and consequently conceded that a compelling need for testimony by closed circuit television under KRS 421.350 could not be shown. The District Court then heard arguments from all parties, including the victim's guardian *ad litem*, regarding what procedures should be put in place under KRS 26A.140 to shield the child victim from the alleged perpetrator of the offense against her. The court noted that the victim was "extremely hesitant" to testify, and concluded that screens were necessary in order to allow the child to do so under KRS 26A.140.

The final adjudication hearing took place on March 20, 2015. Noting that the victim had "expressed apprehension" at the idea of testifying while able to see J.E. and vice versa, the District Court, pursuant to KRS 26A.140, directed that shields be set up to obstruct the view of the defense table from the witness stand during her testimony. The District Court heard the defense arguments that the Confrontation Clause required the Commonwealth to show compelling need for obstructing the defendant's view of the witnesses, but, relying on its earlier conclusion, ultimately allowed the shields. The victim was the only witness so screened. The district court also allowed the victim's grandmother, who was her custodian and guardian, to sit beside the victim as she testified from counsel's table.

Before the adjudication hearing commenced, the court again conducted a brief hearing to determine whether the victim possessed the competency to offer testimony. The court was satisfied with her responses to questions intended to reveal whether the victim understood the difference between telling the truth and lying. When asked about details from the alleged incident, the victim appeared hesitant to answer, but after encouragement from her grandmother, gave responses that satisfied the court that she was capable of recalling facts and relaying them to others. The district court thus found the victim competent.

The Commonwealth's case consisted of the victim's testimony and that of her brother. The victim, who was by then 8 years old, testified that J.E. had licked her genitals under the covers of the bed they shared, as well as touched her with his fingers. She testified that her brother witnessed this behavior when he entered the room and pulled the covers off the bed. Defense counsel impeached this testimony by pointing out that the victim had denied any digital contact in her C.A.C. statement. The brother testified that he had seen J.E. licking the victim's genital region "where she pees", as well as stroking her and digitally penetrating her. Defense counsel impeached this testimony using the brother's C.A.C. statement that failed to mention seeing any oral-genital contact.

J.E.'s case consisted of the testimony of himself and the investigating officer from the Erlanger Police Department. J.E. testified that on the night in question, the victim had asked him to lick her vagina, and when he refused, she went into the bedroom on her own. J.E. then testified that the brother emerged from the bedroom and informed him "Well, I did it." J.E. further testified that he would have told his mother, but for her intoxicated and unconscious state. The investigating officer testified that J.E. had maintained his innocence and that J.E.'s hearing testimony was consistent with a statement he had previously given to law enforcement.

After the close of evidence, the District Court noted that it found the testimony of the victim and her brother credible, and the testimony of J.E. lacked credibility. The District Court concluded that the evidence did not prove beyond a reasonable doubt that J.E. had engaged in deviant sexual contact by manual contact, but the evidence did prove beyond a reasonable doubt that the oral-genital contact had occurred, and such contact satisfied the elements of first-degree sodomy on a victim under the age of twelve.

The court adjudged J.E. guilty of a Class A felony sexual offense and he was committed to the custody of the Department of Juvenile Justice. The Department of Juvenile Justice conducted a juvenile sexual offender assessment, concluding that J.E. presented a low risk of re-offense, and displayed no signs of sexual preoccupation or deviant sexual fantasies.

J.E. filed a timely appeal to the Circuit Court, wherein he argued the same errors alleged before this Court. The Circuit Court affirmed the District Court. Specifically, the Circuit Court held that the District Court: did not abuse its discretion in finding the victim competent to testify, had made a finding of compelling need sufficient to justify the intrusion upon J.E's right to confrontation, did not err when allowing the grandmother to reassure the victim during her testimony, and that the District Court had correctly concluded the evidence was sufficient to support the adjudication of guilt. The Circuit Court held that although use of closed circuit television method to screen "is preferred, the limitation of the Appellant's right to confront by use of screen[s] in this matter was harmless given the totality of the circumstances."

J.E. then moved this Court to exercise discretionary review, which this Court granted.

## II. ANALYSIS

### A. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN FINDING THE VICTIM COMPETENT TO OFFER TESTIMONY

■ Rule 601 of the Kentucky Rules of Evidence ("KRE") provides that a witness is competent unless that witness: 1) lacks the capacity to accurately perceive the matters about which the witness proposes to testify; 2) lacks the capacity to recall facts; 3) lacks the capacity to express himself or herself so as to be understood, either directly or via interpreter; and 4) lacks the capacity to understand the obligation to tell the truth. KRE 601(b)(1)–(4).

■ With regard to the competency of child witnesses, "[i]t seems to be rather well settled that no rule defines any particular age as conclusive of incapacity." *Thomas v. Commonwealth*, 300 Ky. 480, 189 S.W.2d 686, 687 (1945). This rule was echoed as recently as 2002: "Age is not determinative of competency and there is no minimum age for testimonial capacity." *Pendleton v. Commonwealth*, 83 S.W.3d 522, 525 (Ky. 2002). Additionally, the burden of rebutting the presumption of competency is on the party seeking exclusion of the witness' testimony. *Burton v. Commonwealth*, 300 S.W.3d 126, 142 (Ky. 2009).

■ The issue of competency of any witness is squarely within the discretion of the trial court. *Bart v. Commonwealth*, 951 S.W.2d 576 (Ky. 1997); *Wombles v. Commonwealth*, 831 S.W.2d 172 (Ky. 1992). Additionally, "[c]ompetency is an ongoing determination for a trial court," which continues throughout the proceedings, even after any competency hearing has been completed. *B.B. v. Commonwealth*, 226 S.W.3d 47, 49 (Ky. 2007) (citing *Kentucky*

*v. Stincer*, 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987)).

The Circuit Court reviewed the competency proceedings and concluded the District Court had not abused its discretion in concluding she was competent. Having reviewed the same proceedings, we agree. The victim demonstrated an understanding of the difference between truthfulness and lying, as well as the consequences of lying in a court proceeding. Despite J.E.'s insistence, based on the answer to one question, that the victim did not understand that she was not allowed to guess at the answers, the victim stated that she did not know the answers to several other questions rather than offering guesses. The victim demonstrated an ability to express herself clearly and an ability to recall facts.

J.E. nonetheless contends before this Court that in instances where a child witness' competency is in question, an expert evaluation is vital, and is even required by due process and fundamental fairness. J.E. cites *Mack v. Commonwealth*, 860 S.W.2d 275 (Ky. 1993), to support that position. However, that case can easily be distinguished from the facts at hand. In *Mack*, the child witness had previously been treated by a psychiatrist for post-traumatic stress related to a prior incident of sexual abuse, and the defense alleged— with medical evidence in hand—that the child may have been exhibiting transference when making the allegations against the defendant. *Id.* at 277–78. The prior acts had occurred six years before the acts of which the victim complained, and the defense sought to introduce medical evidence tending to show some similarities between the prior sexual abuse of the witness and the new allegations. *Id.* at 278. The Supreme Court's ultimate ruling hinged on the Court's belief "that the circumstances in the present case indicate a substantial possibility that a defense or independent expert would provide genuinely relevant and beneficial evidence on the question of concoction or transference from the child's unfortunate past." *Id.* at 277.

We disagree with J.E.'s contention that *Mack* requires an expert evaluation to determine the competency of child witnesses. By its own language, the holding of *Mack* appears limited to the narrow set of facts presented in that case, that is, where the witness' history of mental health issues presented a legitimate risk that the witness had an inability to differentiate between one instance of abuse and another. Here, the defense lacks an allegation, let alone medical evidence, of any "unfortunate past" of this victim. Only this one incident is alleged. *Mack* cannot apply here, and we cannot conclude the District Court abused its discretion in either denying J.E.'s request for an expert evaluation.

From the record, we cannot conclude that the District Court abused its discretion in finding the victim competent to testify.

## B. THE SCREENS OBSTRUCTING THE APPELLANT'S VIEW OF THE VICTIM AS SHE TESTIFIED VIOLATED HIS RIGHT TO CONFRONTATION

■ On this issue, this Court is tasked in this matter with examining the competing interests of the protection of child victims of sexual offenses as witnesses against the right of the accused to confront and cross-examine these children.

■ Mindful of the infamous 1603 English treason trial of Sir Walter Raleigh, where a wrongful conviction resulted primarily from a dubious accusatory letter, the founding fathers of our nation included in our Constitution the right of an accused

to confront those making the accusations face-to-face. This right has carried forward in our justice system, but Sixth Amendment jurisprudence has evolved and now informs us that "while face-to-face confrontation is preferred, the primary right secured by the Confrontation Clause is that of cross-examination" (*Sparkman v. Commonwealth*, 250 S.W.3d 667, 669 (Ky. 2008) (citing *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)) and "the right to confront is not absolute and may be limited to accommodate legitimate competing interests." *Id.* (citing *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)).

The Supreme Court of the United States held, a factually similar case, *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), that "the irreducible literal meaning of the Clause: 'a right to *meet face to face* all those who appear and give evidence *at trial*." *Coy* at 1021, 108 S.Ct. 2798 (quoting *California v. Green*, 399 U.S. 149, 175, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (Harlan, J. concurring) (emphasis in original)). The *Coy* Court did, however, "leave for another day, however, the question whether any exceptions exist. Whatever they may be, they would surely be allowed only when necessary to further an important public policy." *Id.*

Two years later the Supreme Court stepped back from the hardline rule of *Coy*, and fleshed out some of those exceptions envisioned in *Coy*. In *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the court held that the right to face-to-face confrontation may be denied. "In sum, our precedents establish that 'the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial,' [*Ohio v.*] *Roberts, supra,* 448 U.S. [56, 63, 100 S.Ct. 2531, 65 L.Ed. 597 (1980) (*abrogated by Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d

177 (2004))] (emphasis added; footnote omitted), a preference that 'must occasionally give way to considerations of public policy and the necessities of the case.' *Mattox* [*v. U.S.*, 156 U.S. 237, 243, 15 S.Ct. 337, 39 L.Ed. 409 (1895)]." *Craig* at 849, 110 S.Ct. 3157.

The Kentucky legislature, by its enactment of KRS 421.350, saw fit to address an important public policy interest, the protection of child victims of illegal sexual activity when testifying against the alleged perpetrators. *Sparkman* at 669. The legislature has also announced a related and equally important public policy, that of accommodating the special needs of child witnesses, with the enactment of KRS 26A.140.

KRS 421.350 applies in prosecutions of sexual offenses where the victim or a witness is under twelve year of age. In pertinent part, it states:

(2) The court may, on the motion of the attorney for any party and upon a finding of compelling need, order that the testimony of the child be taken in a room other than the courtroom and be televised by closed circuit equipment in the courtroom to be viewed by the court and the finder of fact in the proceeding. Only the attorneys for the defendant and for the state, persons necessary to operate the equipment, and any person whose presence the court finds would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony. Only the attorneys may question the child. The persons operating the equipment shall be confined to an adjacent room or behind a screen or mirror that permits them to see and hear the child during his testimony, but does not permit the child to see or hear them. The court shall permit the defendant to observe and hear the testimony of the child in

person, but shall ensure that the child cannot hear or see the defendant.

(3) The court may, on the motion of the attorney for any party and upon a finding of compelling need, order that the testimony of the child be taken outside the courtroom and ·be recorded for showing in the courtroom before the court and the finder of fact in the proceeding. Only those persons permitted to be present at the taking of testimony under subsection (3) of this section may be present during the taking of the child's testimony, and the persons operating the equipment shall be confined from the child's sight and hearing as provided by subsection (3) of this section. The court shall permit the defendant to observe and hear the testimony of the child in person, but shall ensure that the child cannot hear or see the defendant. The court shall also ensure that:

(a) The recording is both visual and oral and is recorded on film or videotape or by other electronic means;

(b) The recording equipment was capable of making an accurate recording, the operator was competent, and the recording is accurate and is not altered;

(c) Each voice on the recording is identified; and

(d) Each party is afforded an opportunity to view the recording before it is shown in the courtroom.

[...]

(5) For the purpose of subsections (2) and (3) of this section, "compelling need" is defined as the substantial probability that the child would be unable to reasonably communicate because of serious emotional distress produced by the defendant's presence.

KRS 421.350(2)–(3), (5).

KRS 26A.140 applies in any criminal proceedings requiring the testimony of a child witness. That section provides:

(1) Courts shall implement measures to accommodate the special needs of children which are not unduly burdensome to the rights of the defendant, including, but not limited to:

[...]

(b) During trials involving child victims or child witnesses, the environment of the courtroom shall be modified to accommodate children through the use of small chairs, frequent breaks, and the use of age appropriate language.

(c) Children expected to testify shall be prepared for the courtroom experience by the Commonwealth's or county attorney handling the case with the assistance of the guardian ad litem or special advocate.

(d) In appropriate cases, procedures shall be used to shield children from visual contact with alleged perpetrator.

KRS 26A.140(1)(b)-(d).

The Appellant contends that the actions of the District Court, in attempting to comply with KRS 26A.140, violated KRS 421.350 as well as the right to confrontation protected by the 6th Amendment of the federal Constitution and Section 11 of the Kentucky Constitution. The Commonwealth, in its brief, as well as during oral argument in this matter, conceded that a Confrontation Clause violation occurred, instead arguing that the error was harmless and did not merit reversal of the conviction under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

On appeal, the Circuit Court found that no Confrontation Clause violation occurred, as the screening resulted from a finding that a compelling need existed to do so, but also noted that any error *in the screening method* was harmless. Specifically, the Circuit Court noted that while the

closed circuit television method of separating child victims from their accusers (the method prescribed in KRS 421.350) would have served the same purpose, no harm resulted from the District Court's use of screens.

We reject the Appellant's contention that compliance with KRS 26A.140 necessarily requires implementation of the procedures set forth in KRS 421.350. The legislature has had ample opportunity to amend KRS 26A.140 if it intended the phrase "procedures shall be used to shield children from visual contact with alleged perpetrator" to mean compliance with KRS 421.350, or to amend KRS 421.350 to reference KRS 26A.140. We can only interpret the plain meaning of the words, which do not *mandate* taking of child witnesses' testimony via closed circuit television in *either* provision.

On the other hand, we interpret the phrase "not unduly burdensome to the rights of the defendant" from KRS 26A.140 to be analogous to the requirement of a finding of a "compelling need" found in KRS 421.350, as both provisions would require such finding under *Chambers*, *Craig*, and *Sparkman*, in order to comply with the Confrontation Clause.

We disagree with the Circuit Court in its conclusion that the District Court satisfied this requirement in finding that the victim was "extremely hesitant" to testify absent some modification of the courtroom environment. Not only did the Commonwealth concede that it had no proof of a compelling need to present during the January 2014 hearing, the District Court took no testimony at all before issuing such a finding. Instead the District Court relied on the Commonwealth's indications that the two child witnesses were apprehensive about being in the same room as J.E.

Unlike the trial judge in *Danner v. Commonwealth*, 963 S.W.2d 632 (Ky. 1998), the trial court did not make a specific determination that either child witness could or would not testify as to the offense, or that their testimony would be inhibited if given in front of the accused. The compelling need language of KRS 421.350 requires a determination that the child witness would be unable to testify in open court. " 'The Kentucky Statute does not provide a blanket process for taking the testimony of every child witness by TV simply because testifying may be stressful.' " *Price v. Commonwealth*, 31 S.W.3d 885, 894 (Ky. 2000) (quoting *George v. Commonwealth*, 885 S.W.2d 938, 941 (Ky. 1994)).

The Commonwealth having failed to present satisfactory proof of a compelling need before the District Court, we must conclude that the District Court abused its discretion and violated the Appellant's right to confrontation in erecting the screens to obstruct J.E.'s view of the witness during her testimony. Consequently, we must reverse the Circuit Court in affirming the same conclusion.

■■■ The issue now becomes one of remedy for the constitutional violation. The Supreme Court held in *Chapman* that not all constitutional violations merit automatic reversal of a conviction. "Although our prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error, this statement in *Fahy* [*v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963) ][2] itself belies any belief that all trial errors which violate the Constitution automatically call for reversal." *Chapman* at 827–28. A conviction may stand, despite a constitutional

**2.** The statement from *Fahy* to which the *Chapman* Court refers is as follows: "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy* at 86–87, 84 S.Ct. 229.

error, if that error is not merely harmless, but harmless beyond a reasonable doubt. *Chapman* at 828.

The Circuit Court's opinion affirming concluded that the use of screens rather than closed circuit television was merely harmless. For the purpose of this analysis, we must ignore the challenged evidence, the testimony of the victim, and examine the relative strength of the Commonwealth's case without it. Without the victim's testimony, the trial court would be limited to the testimony of the brother, who gave a prior statement which was inconsistent with his trial testimony. This is significant in that his prior statement lacked any indication of oral-genital contact, and only indicated manual contact with the victim. The brother testified during the adjudication hearing that he witness oral-genital contact. The District Court based its conclusion that J.E. committed first-degree sodomy on the finding of credibility of the victim's testimony and her brother's, and the lack of credibility of J.E.'s testimony. It is reasonable that the consistency between the victim's testimony and the brother's trial testimony provided a boost in credibility to both. Absent that extra credibility, it is equally reasonable that the inconsistent testimony of the brother would not weigh as heavily against the testimony of J.E. We must conclude that a reasonable possibility exists that the victim's testimony, taken in a situation which violated J.E.'s constitutional right to confront the witnesses against him, contributed to his conviction. It was not, therefore, harmless beyond a reasonable doubt.

## C. THE DISTRICT COURT, IN ALLOWING THE GRANDMOTHER TO ENCOURAGE THE VICTIM DURING TESTIMONY, DID NOT COMMIT PALPABLE ERROR

 The Court's analysis now moves to the unpreserved error relating to the grandmother's encouragement of the victim.

Under RCr 10.26, an unpreserved error may generally be noticed on appeal *if* the error is "palpable" and *if* it "affects the substantial rights of a party." Even then, relief is appropriate only "upon a determination that manifest injustice resulted from the error." RCr 10.26. "For an error to rise to the level of palpable, 'it must be easily perceptible, plain, obvious and readily noticeable.'" *Doneghy v. Commonwealth*, 410 S.W.3d 95 (Ky. 2013) (quoting *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky.2006)). Generally, a palpable error affects the substantial rights of the party "only if it is more likely than ordinary error to have affected the judgment." *Ernst v. Commonwealth*, 160 S.W.3d 744, 762 (Ky. 2005).

*Martin v. Commonwealth*, 409 S.W.3d 340, 345 (Ky. 2013).

The Appellant's argument on this issue amount to little more than speculation and self-serving conclusory allegations. He argues that the trial court found the two child witnesses, the victim in particular, more credible as the result of the "suggestive reinforcement" by the grandmother during testimony. He argues, entirely without support, that "well-meaning reassurances and reinforcement can taint a child's recollection and testimony." He extended his argument that this somehow bolstered the credibility of these witnesses and the outcome was affected because "the court is not immune to the effect of credibility bolstering any more than juror would be."

However, there is no evidence or even allegation that the grandmother fed answers to either witness or even said any-

thing beyond comforting reassurances to the small children in her care in a stressful situation. We cannot conclude that this interference more likely than not affected the outcome of the hearing. Though irregular and something the District Court should have admonished her against doing, we cannot conclude that the grandmother's behavior rises to the level of palpable error.

### D. THIS COURT'S CONCLUSION RELATING TO THE CONSTITUTIONAL VIOLATION PROHIBITS THE CONCLUSION THAT EVIDENCE WAS SUFFICIENT TO SUPPORT THE DISTRICT COURT'S FINDING OF GUILT

■ Appellate review of the sufficiency of the evidence in a juvenile proceeding is whether any rational finder of fact, taking the Commonwealth's evidence in the most favorable light, could find the essential elements of an offense are satisfied beyond a reasonable doubt. *R.S. v. Commonwealth*, 423 S.W.3d 178, 187 (Ky. 2014) (quoting *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

■ J.E. alleges three reasons to justify finding that the evidence presented failed to meet that standard. First, he argues that the victim's competency was questionable. Second, he argues that the brother's testimony suffered from credibility issues. Third, he argues that the District Court did not believe the entirety of the evidence presented (as reflected by the conviction of sodomy based solely on the oral-genital contact and not on the digital penetration).

■ As discussed at length above, the District Court did not abuse its discretion in finding the victim competent, and any arguments made by the Appellant regarding that issue have been obviated by our conclusion above. Regarding his second

and third arguments on this issue, questions of the weight of evidence in juvenile proceedings fall within the trial court's discretion as the fact-finder. *S.D.O. v. Commonwealth*, 255 S.W.3d 517, 521 (Ky. App. 2008) ("It is well-settled that the weight of the evidence and credibility of witnesses are functions peculiarly within the trier of fact's determination and will not be disturbed.") The Appellant had, and took advantage of, an opportunity to assail the credibility of these witnesses, and the District Court simply believed the Commonwealth's evidence more than his own. This is neither error, nor abuse of discretion.

However, because the District Court considered evidence which was introduced in violation of J.E.'s constitutional rights, the determination becomes suspect, and we can no longer conclude with the necessary confidence that the evidence was sufficient.

### III. CONCLUSION

This Court having reviewed the record, we affirm the Circuit Court and District Courts' rulings relating to the competency of the child witnesses and the grandmother's alleged interference in the victim's testimony. However, after finding reversible error in the rulings of the Circuit Court and the District Court relating to the violation of J.E.'s right to confrontation, we reverse the conviction and remand for a new adjudication hearing consistent with this opinion.

ALL CONCUR