RENDERED: FEBRUARY 15, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky FINAL

2016-SC-000673-MR DATE 4/26/18 _Kim Redman, DC_

QUINTON R. HUDDLESTON     APPELLANT

V.     ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE AUDRA JEAN ECKERLE, JUDGE
NO. 14-CR-001620

COMMONWEALTH OF KENTUCKY     APPELLEE

**OPINION OF THE COURT BY JUSTICE VENTERS**

**<u>AFFIRMING</u>**

Appellant, Quinton Huddleston, appeals from a judgment of the Jefferson Circuit Court convicting him of murder, for which he was sentenced to life in prison without the possibility of parole, criminal attempt to commit murder, and several other related crimes. As grounds for relief, he contends that the trial court erred by: (1) denying his request to introduce parole eligibility information during the capital sentencing phase of the trial; (2) permitting the Commonwealth to introduce during the guilt phase evidence of other crimes committed by Appellant against the victims' family; and (3) allowing the testimony of a witness who was three years old at the time of the crimes and six years old at the time of the trial. For the reasons explained below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant and Tanisha Gordon broke up after a tumultuous relationship that included instances of domestic violence. A short time later, Appellant forced his way into Tanisha's apartment where he killed her brother, Joshua Gordon, by shooting him in the chest. Appellant then beat Tanisha with his gun and shot her in the face. Tanisha survived, but Appellant's attack left her with devastating injuries. Her three-year-old son, LaMartez, witnessed the shootings. Later, at the age of six, he briefly testified at Appellant's trial as a witness for the Commonwealth.

The Commonwealth elected to seek the death penalty and the case was tried accordingly. Appellant did not deny that he killed Joshua and attacked Tanisha. He claimed that he did so because of an extreme emotional disturbance. He testified that he went to the apartment with no intent to engage in violence, but when he realized that his relationship with Tanisha was over and that he would not be able to raise LaMartez as his son, he was overtaken by an extreme emotional disturbance impelling him to violence. The jury rejected Appellant's defense and found him guilty as charged.

Although the jury found the existence of a death-qualifying aggravating circumstance, upon completion of the capital sentencing proceeding, it recommended a sentence of life without the possibility of parole. Appellant and the Commonwealth then agreed to concurrent sentences on the remaining crimes. This appeal followed.

2

## II. THE EXCLUSION OF PAROLE ELIGIBILITY INFORMATION DURING THE DEATH PENALTY PHASE IS NOT REQUIRED.

The fact that Appellant was tried and convicted in the same trial for both capital and non-capital crimes posed some penalty-phase complexities for the trial court. KRS 532.055, entitled "Verdicts and sentencing by a jury in felony cases," spells out the truth-in-sentencing process generally applicable in any felony case, while KRS 532.025 details essential sentence-determining factors that pertain only to the process for fixing the penalty for a capital crime when the death penalty is a possible sentence.

As an aside, we review the interplay between KRS 532.055 and KRS 532.025 mindful that in *Commonwealth v. Reneer*, we recognized KRS 532.055 as "a legislative attempt to invade the rule making prerogative of the Supreme Court by legislatively prescribing rules of practice and procedure [and therefore] it violate[d] the separation of powers doctrine enunciated in Section 28 of the Kentucky Constitution." 734 S.W.2d 794, 796 (Ky. 1987). Nevertheless, in the spirit of comity, we declined to hold KRS 532.055 unconstitutional and we agreed to follow its process, at least "for the time being." *Id.* at 798. We recently reiterated our recognition of that legislative incursion, and our continuing acceptance of it as a matter of comity, in *Jackson v. Commonwealth*, 481 S.W.3d 794, 799–800 (Ky. 2016). We continue that policy now.

Returning to the matter at hand, in *Francis v. Commonwealth*, reconciling what we saw as an inconsistency in the two processes set forth in KRS 532.025 and KRS 532.055, we held that "in any case in which the death

3

penalty is sought, the capital penalty sentencing phase pursuant to KRS 532.025 should be conducted before the truth-in-sentencing hearing under KRS 532.055(2) and the PFO proceeding per KRS 532.080 are held." 752 S.W.2d 309, 311 (Ky. 1988). Our purpose was to prevent the capital sentencing process from being tainted by truth-in-sentencing information admissible under KRS 532.055. Significantly, at the time of the *Francis* decision, KRS 532.055(3) expressly stated that the truth-in-sentencing provisions of KRS 532.055 *"shall not apply to sentencing hearings provided for in KRS 532.025* [for death penalty sentencing]." (Emphasis added.)[1]

As a natural corollary of the *Francis* rule, we held in *Perdue v. Commonwealth* that "when the death penalty is sought, evidence of minimum parole eligibility guidelines may not be introduced at all." 916 S.W.2d 148, 163 (Ky. 1995). "[P]arole eligibility information which is fully admissible under KRS 532.055 has no place in a death penalty hearing pursuant to KRS 532.025.

---

[1] Justice Leibson's dissent in *Francis* (based upon his rejection of the Majority's view that the error was harmless) highlighted the statutory rationale for the *Francis* rule, stating:

> KRS 532.055, the Truth-In-Sentencing statute, by its expressed terms, applies to all felony sentencing hearings *except* for those 'provided for in KRS 532.025.' KRS 532.055(3). Appellant's sentencing hearing on the murder charge was supposed to be a statutory hearing conducted pursuant to KRS 532.025. . . . The only fair way to implement both the capital sentencing statute and the truth-in-sentencing statute is to prohibit use of the latter in any stage of a capital case. Alternatively, at the least, the capital penalty phase should be conducted before the truth-in-sentencing statute is invoked so as to exclude prohibited testimony from the jury during its capital phase deliberations.

752 S.W.2d at 312.

4

Under no circumstances should parole eligibility enter into death penalty deliberations." *Id.* at 164 (citing *Francis*, 752 S.W.2d 309).

At the conclusion of the guilt phase of his trial, Appellant asked the trial court to combine the death penalty sentencing phase of the trial with the truth-in-sentencing phase. In connection with this request, Appellant specifically asked that he be allowed to introduce the parole eligibility information relevant to prison sentences that the jury might impose in lieu of the death penalty.[2] Appellant wanted the jury deciding the death penalty to know that if sentenced to imprisonment for a term of years, Appellant would still serve a very long period of confinement (85% of the total sentence or 20 years, whichever is less) before becoming eligible for release on parole. The trial court and the prosecutor agreed that there was no sound reason to exclude the parole eligibility standards relevant to the possible non-death capital crime penalties. However, the trial court was bound to follow the dictates of *Perdue*, and so it denied the motion. On appeal, Appellant contends that this exclusion of parole eligibility information relevant to capital crime sentences was error, and he invites us to reevaluate the *Francis* and *Perdue* holdings in that regard.

Appellant's argument has merit because in 1998, after *Francis* and *Perdue* were decided, the General Assembly deleted from KRS 532.055(3) the

---

[2] For example, a life sentence for a capital offense has a minimum parole eligibility requirement of 20 years; a sentence of a term of imprisonment between 20 to 50 years has a minimum parole eligibility period of 85% of the term or 20 years, whichever is less. 501 KAR 1:030. Obviously, the parole eligibility standard is self-evident for three of the penalties authorized for a capital crime under KRS 532.030: death; imprisonment for life without benefit of probation or parole; and imprisonment for life without the benefit of probation or parole for 25 years.

5

language upon which the *Francis* and *Perdue* holdings were predicated.[3] The sentence, "This section [KRS 532.055] shall not apply to sentencing hearings provided for in KRS 532.025 [for death penalty sentencing]," was stricken from the statute. Whatever reservation the General Assembly formerly held against the application of the truth-in-sentencing provisions of KRS 532.055 to death penalty sentencing under KRS 532.025 was abrogated in 1998. Although many of our post-1998 cases continue to apply the *Francis/Perdue* holding, none offer any rationale for retaining the rule.[4]

By its plain language, KRS 532.055 applies generally to all felony prosecutions. Murder is defined by KRS 507.020(2) as a capital offense, which is one of five felony classifications established by KRS 532.010.[5] It follows that without the express statutory prohibition that guided this Court in *Francis* and *Perdue*, the truth-in-sentencing statute, KRS 532.055, on its face would apply to the trial of a murder charge.

---

[3] 1998 Kentucky Acts Ch. 606 (H.B. 455), effective July 15, 1998.

[4] For example, in *Marshall v. Commonwealth*, rendered after the 1998 amendment, we reiterated without critical analysis: "[W]hen the death penalty is sought, the capital penalty hearing should be conducted prior to the truth-in-sentencing hearing because evidence of parole eligibility is admissible during a truth-in-sentencing hearing, but not during a capital penalty hearing." 60 S.W.3d 513, 523 (Ky. 2001) (citing *Francis* and *Perdue*). *See also Stopher v. Commonwealth*, 57 S.W.3d 787, 804 (Ky. 2001); *Emerson v. Commonwealth*, 230 S.W.3d 563, 570 (Ky. 2007); *Fields v. Commonwealth*, 274 S.W.3d 375, 417 (Ky. 2008); *Meece v. Commonwealth*, 348 S.W.3d 627, 722 (Ky. 2011); *Dunlap v. Commonwealth*, 435 S.W.3d 537, 611 (Ky. 2013).

[5] KRS 532.010: "Felonies are classified, for the purpose of sentencing, into five categories: (1) Capital offenses; (2) Class A felonies; (3) Class B felonies; (4) Class C felonies; and (5) Class D felonies."

As part of its truth-in-sentencing mission, KRS 532.055(2)(a)1 permits introduction of parole eligibility information in the penalty phase of a felony trial.[6] KRS 532.025 contains no inconsistent provision pertaining to death penalty sentencing. Since explicit exclusionary language in the pre-1998 version of KRS 532.055(3) was the reason for the *Perdue* rule, the removal of that language from the statute also removed the rational underpinning for *Perdue*. The rule persists now only as a vestige of the statutory past and, like the trial court in this case, we see no sound basis for its continued existence.

Upon review, absent the statutory directive that formerly existed or a procedural rule of the Court to the same effect, we see no reason to maintain the rule prohibiting the introduction of parole eligibility standards relevant to the sentencing alternatives confronting jurors in death penalty cases. Consequently, the holding of *Perdue* is overruled. Consistent with the current statutory structure which we have recognized and enforced as a matter of comity, parole eligibility standards and other information admissible under KRS 532.055 and otherwise consistent with the Rules of Evidence are admissible in the death penalty proceeding.

Appellant further contends that the exclusion of the parole eligibility information from his death penalty hearing was an error of constitutional

---

[6] More precisely, KRS 532.055(2)(a)1 permits the Commonwealth to introduce such evidence. However, in *Boone v. Commonwealth*, 780 S.W.2d 615, 616–617 (Ky. 1989), this Court held that limiting the power to introduce evidence of minimum parole eligibility to the Commonwealth was unconstitutional, and we extended the privilege of introducing such evidence to the defendant.

magnitude, and therefore subject to harmless error analysis only under the "harmless beyond reasonable doubt standard." *Chapman v. California*, 386 U.S. 18 (1967). Assuming that to be the case, we are nevertheless persuaded that the error was, indeed, harmless beyond a reasonable doubt.

While the better rule would be to permit Appellant to introduce the parole eligibility standards applicable to the prison terms that the jury could have imposed upon his capital murder conviction, Appellant was tried for his crimes in accordance with prevailing, if outmoded, caselaw. We are unable to perceive any undue prejudice by the omission of that evidence. Most compelling is the fact that the jury was clearly aware that it could spare Appellant's life and bar his eligibility for parole for at least twenty-five years, and it declined that option in favor of the sentence that deprived him of any opportunity for parole. We see no reasonable possibility that the jury which bypassed that alternative might have otherwise opted for imprisonment for a term of years with an even earlier parole eligibility date. Any error associated with the trial court's rejection of Appellant's effort to introduce parole eligibility information at the sentencing phase of the trial was harmless beyond a reasonable doubt.

### III. PRIOR ACTS COMMITTED AGAINST THE GORDON FAMILY WERE PROPERLY ADMITTED.

Appellant next contends that the trial court erred by permitting the Commonwealth to introduce evidence concerning prior violence Appellant had committed against members of Tanisha's family. Several months before his

8

shooting of Tanisha and her brother, Appellant assaulted Tanisha after trying to stab her with a pair of scissors; he also threatened to kill her, her mother, her siblings and her children. In connection with this event, Appellant pleaded guilty to an assault upon Tanisha, wanton endangerment, and criminal mischief. A few weeks before the shootings, Appellant set fire to Tanisha's mother's car and stole her cell phone. He was charged in connection with this event and pleaded guilty.

Although the Commonwealth sought to have the more recent charges consolidated for trial with the instant case, the trial court found them to be too attenuated from the murder case to justify consolidation. However, over Appellant's objection, the Commonwealth was permitted to introduce evidence of these offenses at the trial. Appellant reasons that if these other bad acts were too remote to be tried along with the murder case, they could have very little probative value in the murder case and should have been excluded. He argues that in admitting evidence of these prior crimes, the trial court failed to conduct the KRE 403 analysis of weighing the probative value of the evidence against its prejudicial effect.

Following a hearing on Appellant's objection to the other bad acts evidence, the trial court concluded the evidence was relevant "as to potential intent, motive, plan, m[odus] o[perandi], absence of mistake, absence of mental health issues, aggravating circumstances, and it is not offered to prove predisposition." The trial court also concluded that probative weight of the evidence exceeded its prejudicial effect.

9

Of course, as a general rule, KRE 404(b) prohibits the introduction of other criminal acts. As we have previously stressed, KRE 404(b) is "exclusionary in nature," and as such, "any exceptions to the general rule that evidence of prior bad acts is inadmissible should be 'closely watched and strictly enforced because of [its] dangerous quality and prejudicial consequences.'" *Clark v. Commonwealth,* 223 S.W.3d 90, 96 (Ky. 2007) (quoting *O'Bryan v. Commonwealth,* 634 S.W.2d 153, 156 (Ky. 1982)). To determine the admissibility of prior bad act evidence, we have adopted the three-prong test described in *Bell v. Commonwealth,* 875 S.W.2d 882, 889–891 (Ky. 1994), which evaluates the proposed evidence in terms of: (1) relevance, (2) probativeness, and (3) its prejudicial effect.

We cannot agree with the trial court's scattershot approach for identifying the relevance of Appellant's prior offenses by listing with no explanation most of the possibilities set forth in KRE 404(b)(1). A more precisely targeted explanation for the relevance of such evidence would far more effectively demonstrate the exercise of sound discretion. Nevertheless, we are satisfied that the evidence of Appellant's previous violent behavior directed at Tanisha and her family was relevant to refute his claim that he was only driven to violence by the sudden realization that she had broken off their relationship.

The probative value of the evidence under review was certainly and unquestionably substantial. While its prejudicial effect was correspondingly great, we cannot say that it was unduly prejudicial. Appellant's prior bad

10

conduct paled in comparison to the conduct for which he was being tried and which he had admittedly committed. The trial court did not abuse its discretion by admitting that evidence.

## IV. THE TRIAL COURT DID NOT ERR IN ADMITTING THE TESTIMONY OF A CHILD WITNESS.

Tanisha's son, LaMartez, was three years old when he witnessed the shootings and six years old at the time of trial. Appellant asserted three grounds upon which the trial court erred in admitting LaMartez's testimony: 1) LaMartez was not competent to testify; 2) the trial court failed to administer a formal oath to LaMartez; and 3) LaMartez's testimony should have been excluded because the risk of undue prejudice outweighed its minimal probative value.

LaMartez testified for about three minutes. He said little other than acknowledging that he had witnessed the shootings and identifying Appellant as the perpetrator—both facts that Appellant admits being true. LaMartez was unable to recall whether his mother had been shot once or twice, and he incorrectly testified that Joshua had been shot in the head.

### A. The trial court properly assessed LaMartez's competence.

The determination of a witness's competence to testify falls within the discretion of the trial court. *Bart v. Commonwealth*, 951 S.W.2d 576, 579 (Ky. 1997) (citation omitted). "Competency is an ongoing determination for a trial court," which continues throughout the proceedings, even after any

11

competency hearing has been completed. *B.B. v. Commonwealth*, 226 S.W.3d 47, 49 (Ky. 2007) (citation omitted).

The trial court conducted two competency hearings pertaining to LaMartez. Appellant complains that the evidence developed at these hearings failed to demonstrate an ability to distinguish between the truth and a lie and failed to demonstrate that he had a sufficient recall of the shootings to permit his testimony. Despite some reservations, the trial court found LaMartez competent to testify.

KRE 601 provides that a witness is competent to testify unless he (1) lacks the capacity to accurately perceive the matters about which he proposes to testify; (2) lacks the capacity to recall facts; (3) lacks the capacity to express himself so as to be understood; and (4) lacks the capacity to understand the obligation to tell the truth. KRE 601(b)(1)–(4); *J.E. v. Commonwealth*, 521 S.W.3d 210, 214 (Ky. App. 2017).

As to the competency of a child witness, "[i]t seems to be rather well settled that no rule defines any particular age as conclusive of incapacity." *Thomas v. Commonwealth*, 189 S.W.2d 686, 687 (Ky. 1945). "Age is not determinative of competency and there is no minimum age for testimonial capacity." *Pendleton v. Commonwealth*, 83 S.W.3d 522, 525 (Ky. 2002) (citation omitted). Additionally, the burden of rebutting the presumption of competency is on the party seeking exclusion of the witness' testimony. *Burton v. Commonwealth*, 300 S.W.3d 126, 142 (Ky. 2009). Upon review, we are unable to conclude that the trial court abused its discretion in its determination that

12

LaMartez was competent to testify. Despite his tender years, at least with respect to the matters about which he testified, he demonstrated none of the disqualifying incapacities identified in KRE 601.

**B. The trial court's failure to administer an oath to LaMartez was not palpable error.**

With respect to Appellant's complaint that LaMartez was allowed to testify without being sworn to a formal oath, we note that Appellant did not object at trial and so that issue is not preserved for our review. Absent proper objection, we review only for palpable error. RCr 10.26.

We find no valid basis for reversal based upon the failure to administer the formal oath to LaMartez before he testified. KRE 603 provides that "every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so." The language of KRE 603 "is meant to be flexible enough to allow courts to accommodate the religious beliefs and disbeliefs, to the intellectual immaturity of children, and to emotional weaknesses of the mentally impaired witness." Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 3.05(2) at 246 (5th ed. 2013) (citing *United States v. Ward*, 989 F.2d 1015 (9th Cir. 1992); *Spigarolo v. Meachum*, 934 F.2d 19 (2d Cir. 1991)).

To establish palpable error, Appellant must show "the probability of a different result or error so fundamental as to threaten his entitlement to due process of law." *Brooks v. Commonwealth*, 217 S.W.3d 219, 225 (Ky. 2007) (citation omitted). On appellate review, our focus is on whether "the defect is

13

so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006). Here, any error resulting from the child's testifying without being sworn does not rise to the level of palpable error because it was merely cumulative to other testimony and consistent with Appellant's own admissions.

## C. The prejudicial effect of LaMartez's testimony did not outweigh its probative value.

Appellant contends that LaMartez's testimony was unduly prejudicial. LaMartez was an eyewitness to the crime so his testimony was plainly relevant and, therefore, generally admissible under KRE 401-402, subject to the KRE 403 balancing test. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." KRE 403.

Appellant contends that LaMartez's testimony should not have been admitted under KRE 403 because it "was intended to appeal to both the jury's sense of horror and instinct to punish;" and because the testimony "did nothing but bolster testimony already in evidence from others," and related to a subject that Appellant did not contest—that he had committed the shootings.

We review a trial court's ruling under KRE 403 for abuse of discretion. *Partin v. Commonwealth*, 918 S.W.2d 219, 222 (Ky. 1996). When considering whether to reject relevant evidence under KRE 403, a trial court must consider three factors: the probative worth of the evidence, the probability that the evidence will cause undue prejudice, and whether the harmful effects

14

substantially outweigh the probative worth. *Id.* at 222 (citing Robert Lawson, *The Kentucky Evidence Law Handbook,* § 2.10 at 56 (3d ed. 1993)). We note, again, that LaMartez's testimony lasted only a few minutes and contained obvious errors affecting his credibility which were apparent to the jury. We are satisfied with the trial court's determination that LaMartez's testimony would not generate undue prejudice outweighing the probative worth of the evidence.

## V. CONCLUSION

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

All sitting. All concur. Cunningham, J., also concurs by separate opinion in which Hughes and Wright, JJ., join.

CUNNINGHAM, J., CONCURRING: I concur in the excellent analysis and conclusion reached by Justice Venters' writing for the Majority. I only write to express serious concern that the prosecution utilized a child of such tender years to solicit evidence which was not that critical to the Commonwealth's case. If presented to garner sympathy with the jury, it would do well to consider the human cost to this little boy of having to relive in front of a jury of strangers, what had to be an unbelievably horrible experience. It is important to point out that he was only three years of age when the tragedy occurred. If not forced to recall and relive this scarring experience, the memory of the horrid experience might have been less vivid, if not forgotten in this little boy's memory. Child psychologists can address that issue much better than I can. In some prosecutions, the ends of justice might require it. But, not here. I

15

would urge that extreme caution be used in similar circumstances by prosecutors in this state.

Hughes and Wright, JJ., join.


COUNSEL FOR APPELLANT:

Daniel T. Goyette
Adam Braunbeck
Louisville Metro Public Defender


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jeffrey Allan Cross
Assistant Attorney General