RENDERED:  AUGUST 20, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0618-MR

GARRY BAKER, JR.          APPELLANT

                 APPEAL FROM BELL CIRCUIT COURT
v.         HONORABLE ROBERT V. COSTANZO, JUDGE
                 ACTION NO. 14-CR-00066

COMMONWEALTH OF KENTUCKY          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, JONES, AND McNEILL, JUDGES.

JONES, JUDGE:  Garry Baker, Jr., appeals from the Bell Circuit Court's order

denying his motion to vacate his sentence pursuant to RCr[1] 11.42.  After a

thorough review of the record, we affirm.

---

[1]  Kentucky Rules of Criminal Procedure.

# I. BACKGROUND

On the evening of February 13, 2014, Baker was playing cards at his home with his adult sons Joshua Baker (Joshua) and Garry Baker, III (Garry III), as well as Garry III's son, Allen. Sandra Davis, a longtime girlfriend of Baker's, was also present. Eventually, Garry III and Allen left for their home, which was next door to Baker's residence. After the two left, Baker and Joshua began an argument which escalated to a physical confrontation. The conflict concluded when Baker stabbed Joshua in the chest with a kitchen knife. At some point during the altercation, Sandra ran to Garry III's home to get help. When police arrived at the scene, they found Joshua's body on the floor of the living room and Garry III frantically trying to aid his brother. Police also saw Baker sitting in his armchair, with the kitchen knife on the floor at his feet. Emergency medical personnel determined that Joshua was dead at the scene, and Baker was arrested and charged with murder.

During Baker's trial, the Commonwealth presented testimony from the investigating officers, first responders, the coroner, the medical examiner, Garry III, Garry III's wife, and Allen. The Commonwealth also presented testimony from Sandra Davis, the only person other than Baker and Joshua present at the time of the incident. Sandra has some speech difficulty and an unspecified learning disability. In her testimony, Sandra said she heard the two engage in an

argument in which Joshua told Baker he was a "bad daddy." She testified she then saw Baker pick up and begin "swinging" the knife. She stated she did not actually witness Baker stab Joshua because she ran to get help. When she came back, Joshua was on the floor. During both direct questioning and on cross-examination, Sandra admitted to giving two different accounts of the incident to police during their investigation. In essence, Sandra's first statement inculpated Baker, while her second statement recanted the first. She further admitted that she lied in portions of both previous accounts to police, and she was instructed to do so by Baker's mother, who was deceased at the time of the trial.

Baker testified in his own defense, admitting that he stabbed Joshua but insisting he did so as a matter of self-protection. Baker claimed Joshua shoved him to the ground and threatened to kill him with his bare hands. Baker's attorneys also performed a physical demonstration of how the struggle occurred, while Baker described how Joshua had been choking him. However, police investigators testified there was no evidence of a struggle at Baker's home other than the single stab wound on the victim, and Baker did not show signs of having been beaten or choked after the incident.

The jury found Baker guilty of wanton murder[2] and fixed his sentence at twenty-four-years' imprisonment. On August 21, 2015, the trial court entered its

---

[2] Kentucky Revised Statute (KRS) 507.020(1)(b).

final judgment and sentence in accord with the jury's recommendation. Baker filed a notice of appeal to the Kentucky Supreme Court from the conviction, but he moved to dismiss his direct appeal for reasons not disclosed by the record. The Kentucky Supreme Court granted Baker's motion to dismiss.[3] Then, in February 2017, Baker filed a *pro se* motion to vacate his sentence pursuant to RCr 11.42. The trial court denied the motion on grounds that Baker had failed to verify the memorandum containing his arguments.

Baker subsequently refiled his RCr 11.42 motion, this time with the proper verification, in which he asserted several claims of ineffective assistance of counsel. On February 11, 2020, the trial court once again denied the motion without a hearing. In its order, the trial court found that counsel's purported errors did not prejudice Baker and determined "the Defendant raises some arguable points as to counsel's performance, but none rise [sic] to the level of affording the Defendant the extraordinary relief of which [sic] he asks." (Record (R.) at 239.) This appeal followed.

## I. ANALYSIS

A successful petition for relief under RCr 11.42 based on ineffective assistance of counsel must survive the twin prongs of "performance" and "prejudice" provided in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052,

---

[3] The Kentucky Supreme Court's order granting dismissal in *Baker v. Commonwealth*, No. 2015-SC-000503-MR (Ky. Feb. 12, 2016), may be found on page 83 of the record on appeal.

80 L. Ed. 2d 674 (1984), *accord Gall v. Commonwealth*, 702 S.W.2d 37 (Ky. 1985). The "performance" prong of *Strickland* requires as follows:

> Appellant must show that counsel's performance was deficient. This is done by showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment, or that counsel's representation fell below an objective standard of reasonableness.

*Parrish v. Commonwealth*, 272 S.W.3d 161, 168 (Ky. 2008) (internal quotation marks and citations omitted). The "prejudice" prong requires a showing that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016) (quoting *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064).

Both *Strickland* prongs must be met before relief pursuant to RCr 11.42 may be granted. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. This is a very difficult standard to meet. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). We review counsel's performance under *Strickland de novo*. *McGorman*, 489 S.W.3d at 736.

Baker abandons most of his asserted arguments before the trial court and now presents two arguments on appeal. First, he argues his trial counsel was

ineffective for failing to challenge Sandra Davis's competency as a witness. He argues Sandra's "limitations were apparent during her testimony," and the Commonwealth "pointed out to the court that [she] had mental limitations" when it asked for leeway to ask leading questions. (Appellant's Brief at 6.) Baker also asserts Sandra's testimony was highly prejudicial because she was the only witness to the incident and, without her testimony, there was a reasonable probability that the jury would have accepted his self-protection defense.

As a general rule, KRE[4] 601(a) provides that "[e]very person is competent to be a witness except as otherwise provided in these rules or by statute." A witness lacking competency is one who "(1) lacks the capacity to accurately perceive the matters about which he proposes to testify; (2) lacks the capacity to recall facts; (3) lacks the capacity to express himself so as to be understood; and (4) lacks the capacity to understand the obligation to tell the truth." *Huddleston v. Commonwealth*, 542 S.W.3d 237, 244 (Ky. 2018) (citing KRE 601(b)(1)-(4); *J.E. v. Commonwealth*, 521 S.W.3d 210, 214 (Ky. App. 2017)). "The determination of a witness's competence to testify falls within the discretion of the trial court[,]" and "the burden of rebutting the presumption of competency is on the party seeking exclusion of the witness'[s] testimony." *Huddleston*, 542 S.W.3d at 244 (citations omitted). Finally, "[a]n appellate court

---

[4] Kentucky Rules of Evidence.

may consider a trial court's competency determination from a review of the entire record, including the evidence subsequently introduced at trial." *B.B. v. Commonwealth*, 226 S.W.3d 47, 49 (Ky. 2007) (citation omitted).

After reviewing the record, we agree with Baker that Sandra appeared to have some intellectual disability. However, we are not convinced that her limitations would have led to the trial court's finding her incompetent to testify, even if trial counsel had made the appropriate motion. The requirements for witness competency are minimal. In *Huddleston*, for example, our Supreme Court affirmed the trial court when it found a six-year-old child competent to testify regarding events he witnessed when he was three years old. 542 S.W.3d at 243-44. As succinctly put by Professor Lawson, "findings of incompetence are sure to be rare." ROBERT G. LAWSON, THE KENTUCKY EVIDENCE LAW HANDBOOK § 3.05[1] (2003); *see also* FEDERAL RULES OF EVIDENCE 601, Advisory Committee's Note ("A witness wholly without capacity is difficult to imagine.").[5]

Although Sandra required assistance to testify, in the form of some leading questioning by the Commonwealth, there is no indication that she was unable to perceive and recollect facts, and there was no indication she did not

---

[5] For discussions relating to these principles, see *Kelly v. Commonwealth*, No. 2004-SC-000786-MR, 2006 WL 3386636 (Ky. Nov. 22, 2006); *Cardenas v. Commonwealth*, No. 2017-CA-001904-MR, 2019 WL 2323746 (Ky. App. May 31, 2019). We do not cite these unpublished cases as authority but only for consideration pursuant to Kentucky Rule of Civil Procedure (CR) 76.28(4)(c).

understand her obligation to tell the truth. Indeed, she expressed regret for stating her previous falsehoods to the police. Based on these factors, it is highly unlikely a motion to disqualify Sandra's testimony on the basis of competence would have succeeded. Accordingly, pursuant to the first prong of *Strickland*, we do not consider trial counsel's failure to move to disqualify Sandra's testimony constituted defective performance.

In addition, Sandra's testimony did not prejudice Baker under *Strickland*'s second prong. Sandra's testimony on the stand was that she did not actually see Baker stab his son. When confronted about her previous statements, Sandra admitted to lying to police on multiple occasions prior to trial. Despite Baker's assertions regarding its prejudicial effect, we deem Sandra's testimony to have been equivocal at best. Her admitted tendency to prevaricate in her previous sworn statements effectively limited the impact of her testimony on the jury. "[C]ounsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *Brown v. Commonwealth*, 253 S.W.3d 490, 499 (Ky. 2008) (citations omitted). We discern no grounds for ineffective assistance of trial counsel under either prong of *Strickland*.

In his second argument on appeal, Baker contends he suffered ineffective assistance of appellate counsel (IAAC) when he moved to dismiss

Baker's matter-of-right appeal to the Kentucky Supreme Court. For an IAAC claim to succeed,

> the defendant must establish that counsel's performance was deficient, overcoming a strong presumption that appellate counsel's choice of issues to present to the appellate court was a reasonable exercise of appellate strategy. . . . [T]he defendant must also establish that he or she was prejudiced by the deficient performance, which, as noted, requires a showing that absent counsel's deficient performance there is a reasonable probability that the appeal would have succeeded.

*Hollon v. Commonwealth*, 334 S.W.3d 431, 436-37 (Ky. 2010).

Baker's IAAC claim cannot succeed for multiple reasons. In his brief, Baker contends Sandra's competence to testify as a witness is an issue which appellate counsel should have raised on direct appeal. However, in his *pro se* RCr 11.42 motion to the trial court, Baker did not make this argument. Instead, he asserted his trial counsel was so ineffective, and suffered so many failures of memory, that appellate counsel should have been able to identify appropriate grounds for error. (R. at 210.) This vague assertion violated RCr 11.42, which requires the movant to "state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds." *Roach v. Commonwealth*, 384 S.W.3d 131, 140 (Ky. 2012) (quoting RCr 11.42(2)). Failure to do so "warrant[s] a summary dismissal of the motion." *Id*.

Furthermore, the disparity between the IAAC claim raised before the trial court and the claim raised before us on appeal means this claim is not properly preserved for our review. "Our jurisprudence will not permit an appellant to feed one kettle of fish to the trial judge and another to the appellate court." *Owens v. Commonwealth*, 512 S.W.3d 1, 15 (Ky. App. 2017) (footnote omitted). We may not review grounds raised for the first time on appeal. "The Court of Appeals is without authority to review issues not raised in or decided by the trial court." *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989). Even if we could review the IAAC issue as raised in Baker's brief, however, we deem the issue contesting Sandra's competency to testify would not have succeeded on direct appeal for the aforementioned reasons.

## II. Conclusion

For the foregoing reasons, we affirm the Bell Circuit Court's order denying relief under RCr 11.42.

ALL CONCUR.

BRIEF FOR APPELLANT:

Andrea Reed
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Ken W. Riggs
Assistant Attorney General
Frankfort, Kentucky