Jeff Lynn **GORDON,** Appellant,

v.

**COMMONWEALTH of Kentucky,** Appellee.

No. 2004–CA–001453–MR.

Court of Appeals of Kentucky.

Nov. 9, 2006.

Case Ordered Published by Court of Appeals Jan. 26, 2007

Lisa Bridges Clare, Department of Public Advocacy, Frankfort, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Bryan D. Morrow, Assistant Attorney General, Frankfort, KY, for appellee.

Before ABRAMSON and VANMETER, Judges; KNOPF,[1] Senior Judge.

---

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

## OPINION

VANMETER, Judge.

Jeff Lynn Gordon appeals from the Edmonson Circuit Court's judgment sentencing him to ten years' imprisonment after a jury found him guilty of first-degree sodomy and first-degree sexual abuse. Gordon argues that the trial court erred by failing to direct a verdict in his favor on the sodomy count and, alternatively, by failing to instruct the jury as to second-degree sodomy. He also argues that the Commonwealth's Attorney committed palpable error [2] by attempting to define "reasonable doubt" during voir dire and by commenting on Gordon's prearrest right to silence. For the following reasons, we affirm.

### I. Directed Verdict

■ Gordon's first argument is that as there was insufficient evidence to convict him of first-degree sodomy, the trial court erred by failing to direct a verdict in his favor on that count. We disagree.

The Commonwealth prosecuted Gordon for first-degree sodomy, of which a person is guilty when "[h]e engages in deviate sexual intercourse with another person by forcible compulsion[.]" [3] Gordon argues that he was entitled to a directed verdict because there was no evidence of "forcible compulsion," which KRS 510.010(2) defines as

> physical force or threat of physical force, express or implied, which places a person in fear of immediate death, physical injury to self or another person, fear of the immediate kidnap of self or another

person, or fear of any offense under this chapter. Physical resistance on the part of the victim shall not be necessary to meet this definition[.]

Here, Gordon is not entitled to a directed verdict of acquittal because under the evidence as a whole, it would not be clearly unreasonable for a jury to find guilt.[4] W.H., a 12–year–old female, testified that Gordon followed her into a shed near her house, where he spread her legs with his knees, held her legs tightly so she could not get away, pulled down her shorts, and then inserted his tongue and fingers inside of her vagina. On cross-examination, W.H. further testified that Gordon held her hands behind her back. From this testimony, we do not believe that it would be clearly unreasonable for a jury to find the element of forcible compulsion.

■ Further, it was not necessary for W.H. to testify that she attempted to get away from Gordon during this event to sustain a conviction of first-degree sodomy. KRS 510.010(2) was amended in 1996 to expressly state that a victim does not have to physically resist an attacker in order for the definition of "forcible compulsion" to be met.[5]

■ A different result is not compelled merely because the case was submitted to the jury based solely on W.H.'s testimony and there was no corroborating testimony or physical evidence. "Even if the evidence of the alleged victim is viewed as uncorroborated, standing alone it is still sufficient to prove all the elements of the crime charged, and to create a jury issue." [6] Further, the facts which Gordon

2. RCr 10.26.

3. KRS 510.070(1)(a).

4. *See Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991).

5. 1996 Ky. Acts, ch. 300 § 2.

6. *Dyer v. Commonwealth,* 816 S.W.2d 647, 651 (Ky.1991) (overruled on other grounds by *Baker v. Commonwealth,* 973 S.W.2d 54, 55 (Ky.1998)).

highlights in his brief do not relate to the insufficiency of the evidence; rather, they relate to W.H.'s credibility and the weight to be given to her testimony, which are matters reserved for the jury.[7] The fact that W.H. described Gordon as "having three hands," in that she testified that he held her hands, held her legs, and inserted his fingers into her vagina, was not "so incredible or improbable or so at variance with natural laws or common human experience as to be patently untrue" so as to compel a directed verdict of acquittal.[8] Rather, the jury simply could have believed that these events did not occur simultaneously. Similarly, W.H.'s inconsistencies in reporting the dates of the alleged events related to her credibility and the weight to be given to her testimony, and it was ultimately for the jury to determine whether first-degree sodomy occurred.

## II. Jury Instructions

■ Next, Gordon argues that the trial court erred by failing to instruct the jury regarding second-degree sodomy, which occurs when a person, "[b]eing eighteen (18) years old or more, ... engages in deviate sexual intercourse with another person less than fourteen (14) years old[.]"[9] We disagree.

As the Kentucky Supreme Court has explained, a defendant is entitled to a lesser-included offense instruction "if the jury could consider a doubt as to the greater offense and also find guilt beyond a reasonable doubt on the lesser offense."[10] Kentucky Instructions to Juries (Criminal)

states that in a case where "there is evidence that forcible compulsion did not occur and the victim was less than sixteen years of age," it may be appropriate to instruct on second-degree sodomy, *inter alia,* as a lesser-included offense.[11] Here, as set forth above, W.H. testified that Gordon spread her legs with his knees, held her legs tightly so she could not get away, pulled down her shorts, held her hands behind her back, and inserted his tongue and fingers inside of her vagina. Gordon, on the other hand, testified that this event did not occur. Thus, the evidence supported either a verdict that deviate sexual intercourse occurred by forcible compulsion, or a verdict that none occurred at all. It did not support a verdict that deviate sexual intercourse occurred without forcible compulsion, and Gordon was not entitled to an instruction on that offense.

## III. Defining "Reasonable Doubt"

■ Next, Gordon argues that the Commonwealth's Attorney committed palpable error[12] during voir dire by defining the term "reasonable doubt" as follows:

The fact that there are inconsistencies of witnesses, will you be able to judge those on their face, of what they were really trying to say to see whether they were telling the truth? Or do you have a preconceived notion that if there is inconsistency there must be reasonable doubt? If it wasn't perfect—if the Commonwealth's case is not perfect—if there is one inconsistency. And sometimes that inconsistency may not mean anything. But because of that you'll say,

---

7. *See Benham,* 816 S.W.2d at 187.

8. *See Bussey v. Commonwealth,* 797 S.W.2d 483, 484 (Ky.1990) (quoting *Holland v. Commonwealth,* 272 S.W.2d 458 (Ky.1954)).

9. KRS 510.080(1)(a).

10. *Parker v. Commonwealth,* 952 S.W.2d 209, 211 (Ky.1997).

11. 1 Cooper, *Kentucky Instructions to Juries (Criminal)* § 4.35 cmt. (rev. 4th ed.1999).

12. RCr 10.26.

"Well, he said light blue. He said Kentucky blue. That must be reasonable doubt." Does anyone have those kind of preconceived notions?

We do not believe that the Commonwealth attorney impermissibly defined "reasonable doubt." [13] However, even if this comment was error pursuant to *Commonwealth v. Callahan*[14] and its progeny, we do not believe that the unpreserved error rose to the level of palpable error. The Kentucky Supreme Court has explained that an appellate court may consider an unpreserved, palpable error

> which affected the defendant's "substantial rights" and resulted in "manifest injustice." RCr 10.26. In determining whether an error is palpable, "an appellate court must consider whether on the whole case there is a substantial possibility that the result would have been any different." *Commonwealth v. McIntosh*, Ky., 646 S.W.2d 43, 45 (1983).[15]

We simply do not believe that absent the error, the jury's verdict would have been different.

## IV. Gordon's Prearrest Silence

■ Finally, Gordon argues that the Commonwealth's Attorney committed palpable error [16] by cross-examining him regarding his prearrest silence in contravention of his rights under the Fifth Amendment. More specifically, Gordon testified when either W.H.'s school counselor or Sheriff B.J. Honeycutt asked Sherry, W.H.'s mother, and Gordon to come to the school on a weekday afternoon, Sherry complied but he did not, despite the fact that he did not have to go to work for several hours. Gordon further testified that he wanted to speak to his attorney before talking to anyone, and that he finally spoke with Sheriff Honeycutt and the school counselor a few days later.

■ We do not believe that a Fifth Amendment violation occurred here. While the Fifth Amendment's self-incrimination clause "protects a person ... against being incriminated by his own compelled testimonial communications[,]" [17] here Gordon made no testimonial acts that "impl[ied] assertions of fact." [18] Further, "[t]he safeguards against self-incrimination are for the benefit of those who do not wish to become witnesses in their own behalf[.]" [19] By taking the stand, a defendant waives his "cloak of immunity," allowing cross-examination on prior silence.[20] The testimony in question here was elicited during the Commonwealth's cross-examination of Gordon.[21]

13. *See Caudill v. Commonwealth*, 120 S.W.3d 635, 675 (Ky.2003) ("prosecutor's statement that 'just because there is a question or some unanswered part of the case, that there is automatically reasonable doubt' did not impermissibly define 'reasonable doubt' ").

14. 675 S.W.2d 391, 392–93 (Ky.1984) (while prosecutor's colloquy did not attempt to define "reasonable doubt," "[p]rospectively, trial courts shall prohibit counsel from *any* definition of 'reasonable doubt' at any point in the trial").

15. *Commonwealth v. Pace*, 82 S.W.3d 894, 895 (Ky.2002).

16. RCr 10.26.

17. *Doe v. United States*, 487 U.S. 201, 207, 108 S.Ct. 2341, 2345, 101 L.Ed.2d 184 (1988).

18. *Id.* at 209, 108 S.Ct. at 2347.

19. *Raffel v. United States*, 271 U.S. 494, 499, 46 S.Ct. 566, 70 L.Ed. 1054 (1926).

20. *Id.* at 497, 46 S.Ct. 566.

21. *See Jenkins v. Anderson*, 447 U.S. 231, 238, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980) ("Fifth Amendment is not violated by the use

■ Further, even if the testimony was error, it was not palpable error. Assuming without deciding that Kentucky courts will treat prearrest silence like post-arrest silence,[22] the Kentucky Supreme Court's opinion in *Wallen v. Commonwealth*[23] is instructive:

> [N]ot every isolated instance referring to post-arrest silence will be reversible error. It is only reversible error where post-arrest silence is deliberately used to impeach an explanation subsequently offered at trial or where there is a similar reason to believe the defendant has been prejudiced by reference to the exercise of his constitutional right. The usual situation where reversal occurs is where the prosecutor has repeated and emphasized post-arrest silence as a prosecutorial tool.

As was the case in *Wallen*, the Commonwealth did not focus on Gordon's comment here, and the comments were not linked to Gordon's story, making any error harmless.[24]

The Edmonson Circuit Court's judgment is affirmed.

ALL CONCUR.

of prearrest silence to impeach a criminal defendant's credibility").

**22.** That is, the Commonwealth may not use a defendant's post-arrest silence as evidence of guilt. *Green v. Commonwealth*, 815 S.W.2d 398, 400 (Ky.1991). *See also Combs v. Coyle*, 205 F.3d 269, 282–83 (6th Cir.2000) (discuss-ing circuit split as to "whether the government may comment on a defendant's prearrest silence in its case in chief").

**23.** 657 S.W.2d 232, 233 (Ky.1983).

**24.** *See id.*