# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: SEPTEMBER 27, 2018
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2017-SC-000063-MR

FINAL

DATE 10/18/18 Kim Redmon, DC

JAMES A. CAMPBELL          APPELLANT

V.          ON APPEAL FROM BULLITT CIRCUIT COURT
HONORABLE RODNEY D. BURRESS, JUDGE
NO. 15-CR-00179

COMMONWEALTH OF KENTUCKY          APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

A Bullitt County Grand Jury indicted Appellant, James A. Campbell, on charges of first-degree sodomy, first-degree rape, incest, and first-degree sexual abuse. A Bullitt Circuit Court jury convicted Appellant of incest and sexual abuse and found him not guilty of rape and sodomy. The jury recommended the maximum sentence of twenty-five years and the trial court sentenced Campbell accordingly. Campbell now appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), alleging the trial court erred by: (1) failing to direct a verdict on the sexual abuse charge, (2) giving the jury what he alleges was a faulty instruction, and (3) failing to strike a juror. For the following reasons, we affirm Campbell's convictions and the corresponding sentences.

# I. BACKGROUND

Campbell's seventeen-year-old daughter, Sarah,[1] went with her father to help him go through his deceased mother's belongings. Sarah testified that she watched television most of the day and that her father eventually invited her into his bedroom to watch television with him. She said the two watched part of a movie before Campbell touched her shoulder, kissed her on the lips, and began kissing her stomach. Sarah testified her father then removed her pants and panties and touched her vagina with his hand. She said Campbell kissed her vagina and she told him to stop, but that he did not. Sarah testified that she pushed Campbell away, but that after she told him to stop, he penetrated her vagina with his penis. Sarah stated she was scared because she did not know what Campbell "was gonna do." Campbell did not stop until Sarah pushed him away again—and only after he had ejaculated.

Sarah testified that she put her clothes back on and went back to the couch in the living room where she had spent most of the day watching television. She testified that she did not tell her uncle (who was also in the house) what her father had done because she was scared. She attempted to reach her mother, but was unable to get in touch with her until the following morning. When Sarah's mother picked her up, she told her mother of the incident and her mother took her to the police station and then to the hospital

---

[1] In keeping with our protection of juvenile victims' identities, "Sarah" is a pseudonym.

where DNA was collected from Sarah's panties and a vaginal examination revealed a tear.

At trial, Sarah denied that her father had expressly threatened her or used any physical force. However, she said that she did not want to engage in sexual activity with her father, had told him to stop, and that she was afraid he was going to hurt her.

Campbell gave a recorded statement to police that was played at trial for the jury. He said that he had touched Sarah inappropriately while the two watched a movie. He admitted to touching her breasts. According to Campbell, he asked Sarah if she wanted to stop at various points during the sexual contact and that she indicated she did not. He said that when she told him to stop, he did.

Further facts will be developed below as necessary to our analysis.

## II. ANALYSIS

### A. Directed Verdict

Campbell made a motion during trial asking the court to direct a verdict as to the sexual abuse charge, as he alleged the evidence did not support a finding of forcible compulsion. The trial court denied that motion, and Campbell now appeals that decision to this Court.

This Court succinctly stated the rule trial courts must follow when faced with motions for directed verdict in *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991):

3

On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

Furthermore, "[o]n appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Id.*

Campbell admitted to police that he had touched his daughter inappropriately. Therefore, his argument now is not that the contact did not occur, but, rather, that there was no forcible compulsion. In order to determine whether "it would be clearly unreasonable for a jury to find guilt," we will examine the statutes related to the sexual abuse charge. First, KRS 510.110 reads, in pertinent part "(1) A person is guilty of sexual abuse in the first degree when: (a) He or she subjects another person to sexual contact by forcible compulsion . . . ." Forcible compulsion is defined by KRS 510.010(2) as

physical force or threat of physical force, express or implied, which places a person in fear of immediate death, physical injury to self or another person, fear of the immediate kidnap of self or another person, or fear of any offense under this chapter. Physical resistance on the part of the victim shall not be necessary to meet this definition.

As noted, Sarah testified that Campbell did not expressly threaten her. However, she also testified that her father removed her leggings and panties without her permission and continued sexual advances after she told him to

4

stop and attempted to push him away. We hold there was sufficient evidence to survive Campbell's motion for a directed verdict as to the sexual abuse charge.

We recently dealt with a similar issue in *Jenkins v. Commonwealth*, 496 S.W.3d 435, 446–47 (Ky. 2016). There, Jenkins was accused of raping and sodomizing his seventeen-year-old step granddaughter. Much like the case at bar, "Jane" testified that Jenkins had not hit her, held her down, covered her mouth or threatened her. However, this Court held that the physical force Jenkins used was enough for a reasonable jury to conclude it amounted to forcible compulsion. There, we stated:

> Jenkins forcibly rolled her over, removed her pajama pants, and then physically pushed aside her several attempts to block him from sodomizing her. . . . A reasonable jury could have believed them acts of physical force compelling sex despite the other person's unmistakable non-consent. They were not 'violent' acts, perhaps, at least not violent in the sense of clearly threatening physical harm, but 'forcible compulsion' does not require violence or duress or resistance by the victim. *Gibbs v. Commonwealth*, 208 S.W.3d 848, 856 (Ky.2006) (discussing statutory amendments in 1988 and 1996 eliminating any requirement that the victim resist her attacker and holding that, in that case, the defendant's "act of taking [the victim's] hand and placing it on his penis" satisfied the physical force element, at least for the purpose of a directed verdict motion). *See also Gordon v. Commonwealth*, 214 S.W.3d 921 (Ky.App.2006) (holding that testimony to the effect that the defendant pushed and held apart the twelve-year-old victim's legs in the course of sodomizing her satisfied, for directed verdict purposes, the "forcible compulsion" requirement).

*Id.* at 446. Just as Sarah contends in the present case, Jane continued to tell Jenkins no and attempted to physically stop his attempts.

In *Jenkins*, we held, "[c]learly, a reasonable juror who believed Jane's testimony to be credible could have concluded that Jenkins engaged in sexual intercourse with her by forcible compulsion." *Id.* at 447. Here, Sarah testified her father physically removed her leggings and panties, that she told him to stop several times, and that she attempted to push him away more than once. Just as was the case in *Jenkins*, we hold that these actions were enough to satisfy the physical force prong of the forcible compulsion definition. We hold that a reasonable juror who found Sarah's testimony to be credible could have concluded that Campbell sexually abused her by forcible compulsion. That is all that is required for the Commonwealth to survive a motion for a directed verdict. The trial court did not err in its denial of Campbell's motion for a directed verdict.

Having held that Campbell's actions satisfied the physical force prong of forcible compulsion, we need not address his arguments related to the threat of physical force prong of that test. However, we do reiterate the concept echoed both by the statute and our caselaw that actual physical force is not a requisite of forcible compulsion. In the present case, due to the actual physical force Campbell employed, we need not address whether, from Sarah's perspective, Campbell forced her to engage in the charged sexual acts.

In his reply brief, Campbell argues that the Commonwealth is creating a unanimous verdict issue through the argument in its brief on this issue. Campbell contends that: "[i]n the context of trial and the other instructions, and the Commonwealth's closing arguments, it is clear which acts were

6

supposed to have supported the Sexual Abuse instruction. The Commonwealth specifically argued that the touching of the breasts and vagina with his hands constituted the sexual abuse instruction." Campbell asserts now that because, in the portion of its brief related to sexual abuse, the Commonwealth discusses Sarah's allegations of Campbell penetrating her vagina with his penis, it "seems to now advance the theory that the Sexual Abuse charge was treated as some form of lesser included offense of the Rape charge, despite objecting to such a lesser included offense for that charge at trial." Campbell argues that this creates a unanimous verdict issue—as the jury could have convicted Campbell based upon either sexual intercourse between Campbell and Sarah or based upon Campbell touching her breasts and vagina. However, this argument is unavailing. As Campbell admits, the Commonwealth was clear about which events the jury should consider related to the sexual abuse charge. He points out that the Commonwealth's brief to this Court is the first time it has contended otherwise. We fail to see how the jury could have been non-unanimous based on a theory that was never presented to it.

Campbell also argues that somehow the jury's verdicts as to the other charges means that a directed verdict should have been granted as to sexual abuse. Namely, the jury found in the incest instruction that Campbell engaged in deviate sexual intercourse with his daughter, but found him not guilty of sodomy. This simply indicates that the jury did not find the act of deviate sexual intercourse was completed through forcible compulsion. It does not

7

indicate the jury did not find other acts to have been the result of forcible compulsion. At any rate, the jury's ultimate verdicts have no bearing upon whether the trial court should have granted a directed verdict on the sexual abuse charge. That is simply not the standard.

**B. Jury Instructions**

Campbell next argues that the trial court erred in instructing the jury as to the definition of forcible compulsion. The instruction read:

> FORCIBLE COMPULSION—means physical force or threat of physical force, express or implied, which places a person in fear of immediate death, physical injury to self or another person, fear of immediate kidnap of self or another person, or fear of *rape, sodomy, and/or sexual abuse.* Physical resistance on the part of the victim shall not be necessary to meet this definition.

(Emphasis added.) This instruction differed from the statutory definition of forcible compulsion only in the fact that it replaced the statutory phrase "any offense under this chapter" with "rape, sodomy, and/or sexual abuse." Campbell argues that this instruction "allowed the Commonwealth to argue that if there was not consent then there was forcible compulsion." However, as noted above, Sarah testified that Campbell removed her panties and leggings, continued his sexual advances after she told him to stop, and ignored her efforts to push him away. Thus, this was not a case where the victim remained silent as to whether she consented and no force or threat of force existed, as was the case in *Miller v. Commonwealth*, 77 S.W.3d 566, 575 (Ky. 2002), which Campbell cites to the Court. There, "[t]he prosecutor conceded at the instructions conference that the only evidence of forcible compulsion was that

8

A.M. did not give Appellant her permission to have sexual relations with her." *Id.* Those are not the facts here, and we find Campbell's argument unavailing.

This Court has held "[i]nstructions must be based upon the evidence and they must properly and intelligibly state the law." *Howard v. Commonwealth,* 618 S.W.2d 177, 178 (Ky. 1981). Their purpose "is . . . to state what the jury must believe from the evidence . . . in order to return a verdict in favor of the party who bears the burden of proof." *Webster v. Commonwealth,* 508 S.W.2d 33, 36 (Ky. 1974). In criminal cases, instructions "should conform to the language of the statute," *Parks v. Commonwealth,* 192 S.W.3d 318, 326 (Ky. 2006).

"Once the trial judge is satisfied that it is proper to give a particular instruction, it is reasonable to expect that the instruction will be given properly." *Sargent v. Shaffer,* 467 S.W.3d 198, 204 (Ky. 2015) (citing *Martin v. Commonwealth,* 409 S.W.3d 340, 346 (Ky. 2013)). Because "the trial court has no discretion to give an instruction that misrepresents the applicable law[, t]he content of a jury instruction is an issue of law that must remain subject to *de novo* review by the appellate courts." *Id.* Therefore, we afford the trial court's decision regarding the content of the instruction no deference.

As noted, the jury instruction here only differed slightly from the statutory language. It replaced the words "any offense under this chapter" with "rape, sodomy, and/or sexual abuse." In fact, the enumerated offenses are offenses "under this chapter," and they were offenses for which evidence was presented. This instruction did not misstate the applicable law—rather, it just

clarified the language for the jury. The trial court did not err in presenting this instruction to the jury.

### C. For-Cause Strike

Finally, Campbell asserts that the trial court erred in failing to strike a juror for cause. As this Court has noted, "[l]ong-standing Kentucky law has held that a trial court's decision on whether to strike a juror for cause must be reviewed for abuse of discretion." *Shane v. Commonwealth*, 243 S.W.3d 336, 338 (Ky. 2007) (citing *Adkins v. Commonwealth*, 96 S.W.3d 779 (Ky. 2003); *Pendleton v. Commonwealth*, 83 S.W.3d 522 (Ky. 2002)). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Section 11 of the Kentucky Constitution and the Sixth and Fourteenth Amendments to the United States Constitution guarantee the right to an impartial jury. Kentucky Criminal Rule 9.36(1) establishes the standard a trial court is required to apply during voir dire: "When there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, he shall be excused as not qualified." We have held that a trial court must "determine the credibility of the juror's answers based on the entirety of the juror's responses and demeanor." *Allen v. Commonwealth*, 276 S.W.3d 768, 772 (Ky. 2008). In so doing, "The trial court has the duty to evaluate the answers of prospective jurors in context and in light of the juror's

10

knowledge of the facts and understanding of the law." *Stopher v. Commonwealth*, 57 S.W.3d 787, 797 (Ky. 2001).

Here, the juror in question revealed during voir dire that two of her sisters had accused her uncle of raping them. The sisters did not live in the same house as the juror and the alleged abuse occurred before the juror was born. The juror stated that she had seen the lasting impacts of the abuse on her sisters, but that she still had a relationship with her uncle, who was never charged for the alleged acts. When asked if she could be impartial and base her decision on the facts presented, she responded that she could. After reviewing the video record of voir dire, we note that her response was unequivocal. The defense moved to strike this juror for cause. The trial court denied the motion, stating that the juror's demeanor did not demonstrate bias or prejudice.

As we have held, "Rule 9.36(1) is the only standard for determining whether a juror should be stricken for cause." *Sturgeon v. Commonwealth*, 521 S.W.3d 189, 193 (Ky. 2017). The juror asserted she could do just that through her statements. Furthermore, her demeanor did not belie her words. The trial court was in the best position to determine if the juror in question could conform her views to the law and render a fair and impartial verdict. We hold that the court did not abuse its discretion in failing to strike the juror for cause.

11

### III. CONCLUSION

For the foregoing reasons, we affirm Campbell's convictions and their corresponding sentences.

All sitting.  All concur.

COUNSEL FOR APPELLANT:

John Gerhart Landon
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Thomas Allen Van De Rostyne
Assistant Attorney General